CROSBY v. THORP, HAWLEY & CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENT-AL INJURY—RUNNING TO CATCH TRAIN.

> Where plaintiff, a traveling salesman in the employ of defendant, suffered partial paralysis of the right side as the result of the breaking of a blood vessel in the brain, caused by overexertion and excitement while running to catch a train, he was entitled to compensation under the workmen's compensation act as for an accidental injury. *Schroetke* v. *Jackson-Church Co.*, 193 Mich. 616. OSTRANDER, STEERE, and BROOKE, JJ., dissenting.

Certiorari to Industrial Accident Board. Submitted April 16, 1919. (Docket No. 62.) Decided May 29, 1919.

Charles D. Crosby presented his claim for compensation against Thorp, Hawley & Company for injuries received in defendant's employ. From an order awarding compensation, defendant and the General Accident, Fire & Life Assurance Corporation, insurer, bring certiorari. Affirmed.

*Kerr & Lacey*, for appellants.

*Claude S. Carney*, for appellee.

KUHN, J. The claimant, on June 21, 1917, had been in the employ of the defendant, wholesale candy merchants, for the period of 24 years. In the course of this employment, at the date aforesaid, it was necessary for him to take with him two sample cases and a grip containing his personal effects, the total weight of the cases and the grip being shown to be about 80 pounds. On the said 21st day of June, while at Sturgis, Michigan, the claimant was delayed by a customer

---

As to what is an "accident" within the meaning of Workmen's Compensation Act, see note in L. R. A. 1916A, pp. 29, 227.

and as a result missed the conveyance which, it is his claim, he ordinarily used in going from the hotel to the railroad station. He thereupon hurried from the hotel toward the depot, carrying the three grips. Before he was very far from the hotel, he heard the train which he intended to take to Howe, Indiana, claimed to have become excited, and ran the remainder of the way with his three grips. He arrived at the train before it started, but after he got on to the train it is his claim that a blackness passed over his face and his head felt bad and he felt dizzy. He left his train at Howe, Indiana, went to the hotel, and it is his claim that his hand became numb and that he could not control his right arm and felt a lack of control in his right leg, and was there attended by a physician. He returned to his home in Kalamazoo, and the next morning Dr. Rush McNair, his family physician, was called to attend him. He found that the claimant was suffering from paralysis, caused by the breaking of a blood vessel in his brain. The following is an excerpt from his testimony:

"*Q.* What condition did you find him in?

"*A.* I found Mr. Crosby suffering from nearly complete paralysis of his entire right side; he had very little power of grasp in his right hand. He could use his leg somewhat. His tongue also was affected and the side of his face; his voice was thick as if he had something in his mouth. He was also mentally depressed, he was confused and crying. He was unable at that moment to care for himself. He gave me a description of his experience on the day before and how he felt the evening before and during the night. I got enough out of him to get the history about as he has given it today.

"*Q.* You have heard his description of it here?

"*A.* Yes, sir.

"*Q.* What caused this paralysis?

"*A.* It was due to the rupture of a blood vessel in his brain.

"*Q*. Did you treat him from time to time?

"*A*. Yes, sir; from that time to the present time.

"*Q*. Of course, he was unable to work at that time?

"*A*. Absolutely.

"*Q*. Assuming that on the day before you saw him, he was in ordinary good health, about his business as a traveling salesman, which involved traveling by train from one city to another, through Michigan and northern Indiana, and that while at Sturgis he was, because of being detained, made late for his train and missed the bus and on that account obliged to carry an unusual load of a third grip, which made it necessary for him to hold in one hand two grips, the left hand; on the way to the depot with this extra load occasioned by the third grip, he heard the train pull in about two blocks away, and he became excited and started to run for the train and, on account of the over-exertion and excitement when he got to the train, he felt dizzy and a black cloud crossed his face, as he put it, and this condition that found him in, and also he noticed immediately following that running to the train that he had lost partial control at least of the left side—that was the side that was paralyzed, was it not?

"*A*. The right side.

"*Q*. (Resuming.) The right side, the right arm, and noticed that his tongue was thick and he noticed during the day that he had lost partial control of his right leg, what would you say, assuming the conditions he has testified to be true, and the history of the case, what would be your judgment as to what caused this accident?

"*A*. There would be two factors in the case, first would be the unusual physical exertion.

"*Q*. This extra load he was carrying?

"*A*. The extra load and running for the train, secondly, and perhaps more important would be the excitement of running to catch the train. The mental perturbation that occurs when one is afraid they are going to miss a train, and run to catch it.

"*Q*. How would these matters cause a breaking of a blood vessel?

"*A*. For the simple reason that under mental exer-

tion, the blood pressure rises in the blood vessels, and the heart has to pump harder to pump the blood into the muscles that are taut and contracted, consequently under excitement the blood pressure will also raise, so in this case there would be two factors, two active factors to cause the rise of blood pressure, and if there was a weak place anywhere in the circulatory system, that was unable to stand the strain, it would give away, and that is what happened in this case.

"*Q.* As I understand you then, the extra load, the unusual running to catch the train and the excitement combined, those three things caused the extra load on the blood vessels.

"*A.* Absolutely,

"*Q.* And caused this blood vessel to break?

"*A.* Yes, sir.

"*Q.* And that, in turn, caused the paralysis?

"*A.* Yes, sir."

Whether or not, under these circumstances, the claimant can be said to have met with an accident is the sole question presented upon this record. The industrial accident board found that the facts here presented make out a stronger case than the facts involved in *Schroetke* v. *Jackson-Church Co.*, 193 Mich. 616 (L. R. A. 1917D, 64), and relied upon that decision in awarding the claimant compensation. In my opinion, the conclusion of the industrial accident board with reference thereto was fully warranted, and I am unable to distinguish the situation here presented from the finding in the *Schroetke Case*, which case has not been overruled by this court, but, in fact, has been cited in the following decisions: *Van Gorder* v. *Packard Motorcar Co.*, 195 Mich. 588 (L. R. A. 1917E, 522) ; *Stombaugh* v. *Peerless Wire Fence Co.*, 198 Mich. 445; *Johnson* v. *Mary Charlotte Mining Co.*, 199 Mich. 218; *Roach* v. *Kelsey Wheel Co.*, 200 Mich. 299; *Tackles* v. *Bryant & Detwiler Co.*, 200 Mich. 350; *Guthrie* v. *Detroit Shipbuilding Co.*, 200 Mich. 355.

The finding of the industrial accident board should

be affirmed and compensation awarded in accordance therewith.

BIRD, C. J., and MOORE, FELLOWS, and STONE, JJ., concurred with KUHN, J.

BROOKE, J. (dissenting). I am of opinion that the record contains no evidence of an accident.

OSTRANDER and STEERE, JJ., concurred with BROOKE, J.