TEXAS EMPLOYERS' INS. ASS'N v. Mc-
GRADY et al.   (No. 3394.)

Court of Civil Appeals of Texas.   Texarkana.
June 9, 1927.

Rehearing Denied June 27, 1927.

1. Master and servant ⟝358—Statutes held not to charge deceased employee's beneficiaries with notice that employer was workmen's compensation subscriber (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, art. 8306, §§ 3a, 3c, art. 8507, § 4a, and art. 8309, § 1]).

Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, art. 8306, § 3c, and art. 8309, § 1) held not to charge deceased employee's beneficiaries with notice that employer was subscriber under act, so as to prevent Industrial Accident Board from waiving strict compliance with limitations of article 8307, § 4a, as to time for filing claim, on ground of beneficiaries' ignorance of fact that employer carried compensation insurance policy; article 8306, § 3c, having been adopted to dispense with requirement of section 3a that employer becoming subscriber after employment contract was made notify employee of such fact to escape common-law liability.

2. Master and servant ⟝417(5)—Whether beneficiaries' ignorance of workmen's compensation insurance is cause for waiving timely filing of claim is within Industrial Accident Board's discretion (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, art. 8307, § 4a]).

Whether ignorance of deceased employee's beneficiaries that employer carried compensation insurance policy constitutes good cause for waiver of strict compliance with limitations of Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, art. 8307, § 4a) as to time for filing claim, is within Industrial Accident Board's discretion, abuse of which is subject to review by courts.

3. Master and servant ⟝372—Workmen's Compensation Act applies only to accidental injuries (Complete Tex. St. 1920, art. 5246–82).

Workmen's Compensation Act (Complete Tex. St. 1920, art. 5246–82) applies only to accidental injuries, notwithstanding comprehensive statement of injuries included.

4. Master and servant ⟝373—Hemorrhage of brain, caused by heavy labor, is "accidental injury" within Compensation Act, notwithstanding diseased arteries or other weakened physical condition (Complete Tex. St. 1920, art. 5246–82).

Hemorrhage of brain, caused by heavy manual labor in lifting weights or otherwise, is "accidental injury" within Workmen's Compensation Act (Complete Tex. St. 1920, art. 5246–82), notwithstanding employee's diseased arteries, high blood pressure, or other weakened physical condition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident —Accidental.]

5. Master and servant ⟝373—Instruction, that hemorrhage, due to excessive physical exertion by employee afflicted with hardening of arteries would be compensable injury, held not error (Workmen's Compensation Act; Complete Tex. St. 1920, art. 5246–82).

Instruction that fatal hemorrhage of brain, due to excessive physical exertion by employee, afflicted with hardening of arteries, while engaged in heavy manual labor, would be an injury sustained in course of employment, within Workmen's Compensation Act (Complete Tex. St. 1920, art. 5246–82), held not objectionable as authorizing finding in favor of his beneficiaries for injury not compensable under statute.

6. Appeal and error ⟝1060(1)—Statement in closing argument that defense to cross-action was fabricated and result of conspiracy between witnesses to defeat defendants held to require reversal of judgment for defendants.

In suit to set aside award of compensation for employee's death, statement of defendants' counsel, in closing argument to jury, that plaintiff's entire defense to cross-action was fabricated and result of conspiracy between employer and doctor, testifying for plaintiff, to defeat defendants, held to require reversal of judgment for defendants, as entirely outside record and calculated to prejudice plaintiff's cause in jury's minds.

Appeal from District Court, Anderson County; Ben F. Dent, Judge.

Suit by the Texas Employers' Insurance Association to set aside an award of compensation by the Industrial Accident Board in favor of Mrs. Tommie L. McGrady and others, for the death of L. E. McGrady from injuries sustained while in the employ of A. M. Burns.   From a judgment sustaining the award, plaintiff appeals.   Reversed and remanded.

John R. Gray, of Dallas, N. B. Morris, Jr., of Palestine, and Morris, Sewell & Morris, of Houston, for appellant.

J. D. Pickett, of Palestine, for appellees.

HODGES, J.   The appellant filed this suit to set aside an award made by the Industrial Accident Board in favor of the appellees.   The appeal is from a judgment sustaining the award.   The claim involved is for an allowance of compensation to the wife and children of L. E. McGrady, who died on December 4, 1923.   It is alleged that his death resulted from injuries sustained on January 2, 1923, while employed in the service of A. M. Burns, who held a policy of insurance issued by the appellant.

---

⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Burns was a plumber, and had a contract to do the plumbing for a hotel in the city of Palestine. On the date of the alleged injury, McGrady was in the service of Burns and engaged with pick and shovel in digging a ditch in which some pipes were to be laid. On the morning of January 2, Smith, another employee of Burns, was sent to direct McGrady to report to the office of his employer for the purpose of being transferred to another job. Upon the failure of McGrady to promptly respond, Smith returned to repeat the order. He found McGrady in the hotel building, leaning against a pilaster, apparently in great pain and unable to speak above a whisper. In reply to Smith's inquiry, McGrady stated that he had been struck on the lower part of his back by a piece of timber which fell from an upper floor of the hotel. McGrady was carried to his home, and a physician was called to attend him. An examination disclosed a bruised place on his back, near the lower end of the spine. He remained in bed a few weeks, and then resumed work for Burns, but was given only light work on account of his inability to perform heavy manual labor. It was discovered that immediately following the alleged injury McGrady had a slight impediment in his speech. He also showed other symptoms of having sustained a partial stroke of paralysis. Not long after McGrady resumed work for Burns, the latter, acting for the appellant association, paid McGrady $11.86 as full compensation for his injuries. In May following, McGrady left the service of Burns and went to Port Arthur, where he secured employment as a carpenter; but a few weeks thereafter he suffered another and a more severe stroke of paralysis. He was then sent home, where he remained till his death on December 4, which resulted from a third attack similar to the two preceding. The evidence tends to show that these spells were caused by hemorrhage of the brain—the rupture of a blood vessel.

Neither Mrs. McGrady nor her children knew that Burns carried a policy of insurance with the appellant till in April, 1925, and for that reason no claim for compensation was filed with the Industrial Accident Board till more than a year after the date of the death of McGrady. Upon the presentation of her claim, however, the board made an award allowing appellees compensation in the sum of $14.42 per week for a term of ——— weeks. Within the time prescribed by the statute, the appellant filed this suit with the court below to set aside the award, mainly upon the following grounds: (1) The death of McGrady did not result from any accidental injury sustained while in the service of Burns, and (2) because the claim was filed with the Industrial Accident Board more than six months after the death of McGrady, and there was no good cause shown for the delay.

The following special issues were submitted and answered by the jury:

"1. Did L. E. McGrady receive any injury in the course of his employment on January 2, 1923? Answer: Yes.

"2. Was the injury which the said L. E. McGrady suffered on January 2, 1923, the proximate cause of his death? Answer: Yes.

"3. Did the said L. E. McGrady sustain a hemorrhage of the brain on the 2d day of January, 1923? Answer: Yes.

"4. Did the strain of the employment the said L. E. McGrady was working in contribute to cause said hemorrhage of the brain? Answer: Yes.

"5. Was the hemorrhage of the brain sustained by L. E. McGrady on the 2d day of January, 1923, a proximate cause of his death? Answer: Yes.

"6. Was the death of L. E. McGrady due to the combined effect of the injury received on the 2d day of January, 1923, and the preexisting disease, if any, from which he was then suffering? Answer: Yes."

As explanatory of the first and second questions submitted, the court gave the following instruction:

"By the term 'personal injury' is meant damage or harm to the physical structure of the body and such diseases as naturally result therefrom. The term 'injuries sustained in the course of employment' means all injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by the employee while engaged in the furtherance of the affairs or business of his employer, whether done upon the employer's premises or elsewhere.

"If L. E. McGrady was afflicted with hardening of the arteries prior to the 2d day of January, 1923, and while engaged in heavy manual labor he suffered a hemorrhage of the brain which proximately caused his death, and which hemorrhage of the brain was due to excessive physical exertion of his labor, or if such physical exertion was a contributing cause of the hemorrhage of the brain, then such injury would be an injury sustained in the course of his employment."

Upon the findings of the jury the court entered a judgment for a lump sum, based upon the amount awarded by the Industrial Accident Board. It was agreed that a lump sum allowance might be made, with proper deductions for the cash payment.

[1] The appellant here renews the contention that the claim for compensation was barred by the statute at the time it was filed with the Industrial Accident Board. Other assignments were presented which will be referred to and considered later.

Article 8307, § 4a, pt. 2, of the Workmen's Compensation Act, required that claims for compensation for injuries resulting in the death of an employee shall be filed by his beneficiaries within six months after such death. It also provides, however, that—

"For good cause the board may, in meritorious cases, waive the strict compliance with the fore-

going limitations as to notice, and the filing the claim before the board."

It is conceded that this claim was filed more than a year after the death of McGrady; but it is insisted by counsel for the appellees that the ignorance of the beneficiaries of the fact that Burns carried the policy of insurance constituted a good cause why the board might waive the limitations prescribed by statute. In combating that proposition appellant refers to the following provisions of the statute: Article 8306, § 3c:

"From and after the time of the receipt by the Industrial Accident Board of notice from any employer that the latter has become a subscriber under this law, all employees of said subscriber than and thereafter employed, shall be conclusively deemed to have notice of the fact that such subscriber has provided with the association for the payment of compensation under this law."

That section does not in terms include the beneficiaries of deceased employees, but the following is relied on as giving it the necessary extension:

"Any reference to any employee herein who has been injured shall, when the employee is dead, also include the legal beneficiaries, as that term is herein used, of such employee to whom compensation may be payable." Article 8309, § 1, pt. 4.

While these two provisions now appear as parts of the same act, they were enacted at different times. Section 3c, quoted above, as added by amendment in 1923, became effective on July 2 of that year, six months after McGrady was injured and some time after he left the service of Burns, his employer. It therefore must be given a somewhat retroactive effect if applied to this case.

But there are other reasons why we think these provisions of the statute should not be construed as charging the appellees with notice that Burns was a subscriber under the terms of the Workmen's Compensation Act. In the first part of that act, that in which section 3c appears, the Legislature was dealing with the relations of master and servant in an effort to alter the rights and liabilities which grow out of contracts of employment. It was undertaking to substitute for the master's common-law liability a different remedy for compensation for injuries to the servant while in the performance of his duties. The purpose was to provide a method by which the master might, if he saw proper, relieve himself of his common-law liability, without depriving the servant of an adequate remedy. The Legislature either doubted its power to force the servant, against his will, to surrender his common-law right to hold the master liable and look for relief to another party, or it doubted the propriety of doing so. It therefore provided, in the Workmen's Compensation Act, for an option to be exercised by the servant, allowing him, if he saw proper, upon entering the service, to retain his common-law right to hold the master liable. But it was also provided that upon entering the service of a subscribing employer a waiver of that common-law right would be presumed unless it was expressly retained by the servant. The law placed upon the latter the duty of refusing to surrender such right and of giving notice of such refusal. It also charged the servant, at the time he entered the service, with notice that his employer was a subscriber. That provision appears as section 3a of part 1 of the act, and is as follows:

"An employee of a subscriber shall be held to have waived his right of action at common law or under any statute of this state to recover damages for injuries sustained in the course of his employment if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claims said right *or if the contract of hire was made before the employer became a subscriber, if the employee shall not have given the said notice within five days of notice of such subscription.*"

It will be observed from the portion italicized above that when the employer became a subscriber after the contract of hire was made, the employee must have notice of that fact before his silence would be deemed a waiver of his common-law rights. It has been several times held by the courts of this state that such notice was essential to enable the employer, subscribing after the contract of employment was made, to escape his common-law liability. Poe v. Continental Oil & Cotton Co. (Tex. Com. App.) 231 S. W. 717; Batson-Milholme Co. v. Faulk (Tex. Civ. App.) 209 S. W. 837. It was to dispense with that requirement of notice from the master that the amendment appearing as section 3c was adopted in 1923. That amendment was made a part of those provisions of the Workmen's Compensation Act which dealt with the contract relation of the employer and the employee, and was primarily intended to apply in fixing their status as to rights and liabilities incident to the contract of employment and before any injury occurred. It therefore can have no application to the rights and remedies of an injured employee against the insurance association, whose liability is substituted for that of the employer. It will be observed that in the provision relied on for extending the terms of section 3c so as to include beneficiaries of deceased employees, it uses the language: "Any reference to any employee herein who has been injured," etc. That language, we think, clearly means that the word "employee" shall include beneficiaries only where it is used in referring to those employees who have been injured. Evidently it was intended to apply mainly to those provisions of the act which deal with the rights and remedies of injured employees and the liabilities of the insurance association. The beneficiaries can have no

voice in adjusting the rights of the employee which grow out of the contract of employment. Their rights and remedies are governed by what the employee has done before the injury occurred.

[2] We are of the opinion that the provisions of the statute relied on as imposing upon the appellees constructive notice that Burns was a subscriber under the provisions of the Workmen's Compensation Act are not susceptible of the construction insisted upon by counsel for appellant. However, it is contended that even if the statute is not subject to that construction, the ignorance of the beneficiaries should not be considered a good cause for which the Industrial Accident Board may waive the failure to file the claim for compensation within six months after the death of the injured employee. As authority for that proposition, they refer to the case of Employers' Indemnity Corp. v. Felter (Tex. Com. App.) 277 S. W. 376. An examination of that case shows that this particular question was left undecided. We think it would be adopting a harsh rule to hold that under no circumstances should such lack of information on the part of beneficiaries of deceased employees be regarded by the board as a good reason for extending the time within which a claim for compensation might be presented. It may frequently happen that deceased employees are ignorant and uneducated, and sometimes leave dependents who are still more illiterate and ignorant concerning their legal rights. There can be no injustice to the insurer in allowing the board to take into consideration such ignorance and the circumstances attending each particular case in determining whether or not the time for presenting a claim should be extended. Justice, it seems, would require that the particular situation and all the attending circumstances should be left to the discretion of the board in determining what should be done. An abuse of the discretion thus reposed is always subject to review by the courts.

[3] Appellant complains of the explanatory portions of the charge previously quoted, and which need not be here repeated. The objection is that it authorized the jury to find in favor of the appellees for an injury not compensable under the statute. The evidence tended to show that McGrady was afflicted with high blood pressure prior to the 2d day of January, the time of the alleged injury, and on that date he had a hemorrhage of the brain. The charge authorized the jury to find that McGrady was injured in the course of his employment if the hemorrhage occurring on that day resulted alone from heavy manual labor, regardless of the blow from the falling piece of timber. That this is the effect of the charge is apparently conceded by counsel for the appellees, as he defends that construction of it. The Workmen's Compensation Act (article 5246–82, Complete Texas Statutes of 1920) contains the following definition of "injury":

"The terms 'injury' or 'personal injury' as used in this act shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

After naming several injuries which are excluded, it continues:

"But shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

This language is rather comprehensive, but our Supreme Court has given it a more restricted construction than its terms seem to imply. In the case of Middleton v. Texas Power & Light Co., 108 Tex. 109, 185 S. W. 560, Chief Justice Phillips thus construes the statute:

"Here the character of injuries, or wrongs, dealt with by the act becomes important. Notwithstanding the breadth of some of its terms, its evident purpose was to confine its operation to only accidental injuries, and its scope is to be so limited. Its emergency clause declares its aim to be the protection by an adequate law of the rights of employees injured in 'industrial accidents,' and the beneficiaries of such employees as may be killed 'in such accidents.'"

That construction is now uniformly adopted and followed.

[4] The question presented is reduced to this: Was the hemorrhage of the brain suffered by McGrady at the time referred to an accidental injury if caused alone by heavy manual labor? It has been held that the rupture of a blood vessel caused by an act of violent physical exertion is an accidental injury within the meaning of the Workmen's Compensation Act. Southwestern Ins. Co. v. Owens (Tex. Civ. App.) 198 S. W. 662; Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963; International Travelers' Ass'n v. Dixon (Tex. Civ. App.) 283 S. W. 681; Baggot Co. v. Industrial Commission, 290 Ill. 530, 125 N. E. 254, 7 A. L. R. 1611; Gilliland v. Ash Grove Lime & Portland Cement Co., 104 Kan. 771, 180 P. 793; Fowler v. Bottling Co., 175 App. Div. 224, 161 N. Y. S. 535; Puhlmann v. District Court, 137 Minn. 30, 162 N. W. 678; Crosby v. Thorp, 206 Mich. 250, 172 N. W. 535, 6 A. L. R. 1253; La Veck v. Parke, Davis & Co., 190 Mich. 604, 157 N. W. 72, L. R. A. 1916D, 1277; Patrick v. J. B. Ham et al., 119 Me. 510, 111 A. 912, 13 A. L. R. 427. If the rupture, commonly called a "hemorrhage," results solely from hardened arteries or high blood pressure or any physical ailment, it cannot be classed as an accident, but is a disease. International Trav. Ass'n v. Ross (Tex. Com.

App.) 292 S. W. 193. However, the mere fact that the person in whom the rupture occurred has at the time diseased arteries or high blood pressure is not conclusive proof that the injury is a result of a disease and not accidental. The weakened state of the arteries caused by the physical disorder, or the abnormal strain caused by the high blood pressure, is merely a condition which some exciting or producing cause may operate. If a rupture results from lifting a heavy weight by a healthy person, it is because the exertion is too great for one in that physical condition. The legal principle is the same if the rupture results from lifting a lighter weight by a person of less strength, whether the reduced strength is the result of natural or diseased conditions. Whatever the physical condition of the individual may, be, if it is such that it requires some physical exertion or strain to cause the rupture the injury may properly be classed as an accidental one. If lifting 100 pounds may cause an accidental injury to one person, upon what ground can it be said that a similar injury to another person caused by lifting 50 pounds, or 25 pounds, is not also accidental? If that is not true, then where shall we draw the line between the differing physical conditions; or what shall we adopt as a standard of weight in determining whether the injury is the result of an accident or a disease? It would not be satisfactory or logical to fix that standard at what it would require to injure one in normal health, for even people in normal health vary in physical strength. Nor should it be said that an injury from overexertion by one in a debilitated condition is not an accident simply because it required less violent exercise to produce the injury. Since we cannot fix any standard of condition, neither can we fix any standard of sufficiency of cause operating upon the condition. The legal principle is the same, whether the injury results from lifting weights, as a can of paint, or by some other form of physical overexertion.

[5] The charge complained of is not objected to upon the ground that it is not called for by the pleadings or the evidence, but because it stated an incorrect definition of a compensable injury. It is not therefore necessary, in passing upon the assignment, to determine whether or not the charge is otherwise objectionable. We do not think it is subject to the objection made. For the same reason the objections to the hypothetical questions propounded by appellees to witnesses relative to McGrady's condition will be overruled.

[6] In another assignment appellant calls attention to the language of counsel for appellee in his closing argument to the jury. The bill of exceptions reserved on that occasion contains the following:

"During the closing argument of J. D. Pickett, attorney for Mrs. Tommie L. McGrady and her minor children, defendants in this cause, he stated and argued to the jury that plaintiff's entire defense to defendants' cross-action was fabricated and was the result of a conspiracy between A. M. Burns, the employer of said McGrady, deceased, and Dr. E. V. Converse, one of the doctors who testified in behalf of the plaintiff, to defeat the defendants; that such attorney referred to his clients as 'the widow and her children,' in connection with the payment of money which, he stated, the insurance company justly owed, and that he would not believe A. M. Burns and E. V. Converse on their oath."

The bill also shows that this argument was objected to at the time it was made, and the court was requested to instruct the jury to disregard it. This the court refused to do, and that refusal is here presented as a ground for reversal. It appears from the record that Burns and Dr. Converse were important witnesses for the appellant. If their testimony had been accepted as true by the jury, a different verdict would have been rendered. There is nothing disclosed by the record of their testimony to justify the conclusion that they had formed a conspiracy to injure the appellees or to defeat their claim for compensation. Neither is there anything in the evidence, except contradictory testimony, to impeach their veracity. We are of the opinion that the argument was entirely outside of the record and was calculated to prejudice the appellant's cause in the minds of the jury. Evidently it was the purpose of counsel, in making that kind of an argument, to induce the jury to believe that Burns and Dr. Converse had actually formed a conspiracy to defeat the appellees and that they were wholly unworthy of belief. If the verdict was induced by such an unwarranted criticism of these witnesses, it was procured by unfair means. If the verdict was not, in part at least, induced by that argument, then counsel for appellees failed in his purpose.

Because of this improper argument, the judgment will be reversed and the cause remanded for another trial.