TEXAS INDEMNITY INS. CO. v. SPARKS.
(No. 1721.)

Court of Civil Appeals of Texas. Beaumont.
Oct. 11, 1928.

Minor & Lipscomb, of Beaumont, for appellant.

Conley, Renfro & Keen, of Beaumont, for appellee.

WALKER, J. This is an appeal from a judgment of the district court of Jefferson county sustaining the award of the Industrial Accident Board in favor of appellee against appellant. Appellant's propositions only challenge the sufficiency of the evidence to sustain the trial court's judgment.

Appellee was an employé of the Magnolia Petroleum Company, engaged in insulating pipes. He thus described the circumstances of his injury:

"The pipes run up and down, you know. We were up on those scaffolds, working, insulating those pipes, I and my partner were. My partner at that time was Mr. B. L. Kuhn. The wind was blowing strong, and this process that we were using, well—for the insulating of the fittings and towers, is called monolithic. I believe that is what they call it. It is a light substance, and blew around in the wind considerably and a piece of the stuff flew and blew in my eye. I called to my partner, Mr. Kuhn, and he came over where I was at, and got some of that stuff out of my eye. That was just right at five o'clock, right around five o'clock. He told me, says, 'You had better go to the doctor,' and just when he says that the whistle blew. Then he said, 'It is too late now; the doctor will be gone before you can get there.' I went on to the bath house and taken a bath, and my eye was still hurting and watering and I went on and taken a bath and went home. Next morning—it hurt me all night and next morning my eye was still hurting and watering. When I got back to work as soon as the eight o'clock whistle blew for work hours, I reported to the doctor's office for treatment. He examined my eye and said he couldn't see anything in it."

He further testified that he had never before had trouble with his eyes; that he had never had bad blood nor bad teeth nor gallstones nor rheumatism. A blood test showed that he did not have malaria, and the Wasserman test gave negative results.

The monolithic described by appellee was a compound composed of ground glass, steel wool, asbestos, and substances of that character. This was a very dangerous material with which to work, and as a protection to their workmen, the Magnolia Petroleum Company furnished them rubber gloves with which to handle it.

Dr. Richardson, an eye expert who attended appellee, testified:

"If Dr. Gardner has stated that under the binocular he discovered that the condition of Mr. Sparks' eye was due to keratitis, a deep keratitis of the under layer of the cornea, I would say that that condition could result from an injury. Keratitis is nothing but an inflammation of the cornea; it could result from an injury. * * * If you saw that the inflamed condition was under the surface of the cornea, I would say dust particles could cause that condition. * * * I stated that the condition as stated and he says Dr. Garner testified to with reference to his eye, could be caused by an external condition and injury."

Dr. Lyons, another expert in treating eyes, testified:

"It might be possible for a sliver of spun glass to get through that outer layer without leaving a scar. It could close up within twenty-four hours. I did not see this man within twenty-four hours."

Dr. Gardner, who was the first surgeon to treat appellee's eye, testified:

"What convinces me in my own mind that there was no traumatic condition, was that I could see no evidence of it, and I saw the diseased condition, which was typical of the condition which he had. His condition was from the inside out towards the surface, and not necessarily growing out; it was on the inner side and can go either way. But it was not a condition that was due to an injury that might have been received by dust or particles of some kind blowing into his eye. I say that because there was no evidence of any injury to the outer layer, but his condition was that of keratitis in the inner layers, the deeper layers of the cornea."

Appellant's assignments of error are, in substance, as follows:

1. The court erred in finding as a fact "that on or about January 26, 1926, T. M. Sparks while in the employ of the Magnolia Petroleum Company, and in the furtherance of his duty as such employé, received an injury to his right eye by being struck in the right eye with a piece of foreign substance, and that as a result of said injury the said T. M. Sparks lost the sight of his right eye."

2. The court erred in its finding of fact 9, "to the effect that said T. M. Sparks did not lose the sight of his right eye by reason of any systematic trouble or disease, but that it was the direct and proximate result and caused by an injury, etc."

The evidence we have quoted from the record fully sustains the court's conclusions of fact, thereby sustaining the judgment in favor of appellee. Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963; Texas Employers' Insurance Association v. McGrady (Tex. Civ. App.) 296 S. W. 920.

Affirmed.