MRS. ALVIRADO TAYLOR (WIDOW), LOUISE TAYLOR (DAUGHTER), JOHN L. TAYLOR, DECEASED, v. TOWN OF WAKE FOREST, SELF-INSURER, AND/OR BOARD OF COMMISSIONERS OF WAKE COUNTY, INSURED BY THE TRAVELERS INSURANCE COMPANY.

(Filed 10 December, 1947.)

**1. Master and Servant § 40a—**

An injury compensable under the Workmen's Compensation Act must be the result of an accident which arises out of and in the course of the employment.

**2. Master and Servant § 40c—**

The term "arising out of the employment" within the meaning of the Workmen's Compensation Act refers to the origin or cause of the accident, and while it must be interpreted in the light of the facts and circumstances of each case and may not be precisely defined, there must be some causal connection between the injury and the employment.

**3. Master and Servant § 40d—**

The words "in the course of the employment" within the meaning of the Workmen's Compensation Act refer to time, place and circumstances under which the accident occurs.

**4. Master and Servant § 40c—**

Evidence tending to show that deceased employee, a township constable, was also employed by a municipality of the township to maintain order in its business district during certain hours of the night, and that prior to the hours of his employment by the town, a policeman of the municipality, who knew he was a constable but did not know of his employment by the town, requested him to go with him on a call outside the limits of the town, and that there he was fatally injured in attempting to make an arrest, *is held* to show that the fatal injury did not arise in the course of his employment by the municipality.

**5. Constables § 1—**

A constable must be elected in each township of the State, and all constables, before they are qualified, shall take oaths prescribed for public officers as well as an oath of office. G. S., 151-1; G. S., 151-2.

**6. Constables § 2—**

Constables have the same power and authority as they were invested with prior to our constitutional and statutory provisions, and their powers and duties are co-extensive with the limits of the county in which they are elected.

APPEAL by defendant Town of Wake Forest from *Carr, J.,* at May Civil Term, 1947, of WAKE.

Proceeding under North Carolina Workmen's Compensation Act to determine liability of defendant to claimant.

Before the Hearing Commissioner, Chairman T. A. Wilson, the Town of Wake Forest, self-insurer, and Board of Commissioners of Wake

County, and its insurance carrier, each having denied liability, evidence was offered through witnesses called by claimant, and admissions were made by claimant and by respondents, substantially as follows:

John L. Taylor, claimant's intestate, came to his death instantly on the night of 30 May, 1944, between the hours of seven and eight o'clock, nearer eight than seven, from a gunshot wound administered by a person whom he was trying to arrest, at a point more than one mile from limits of the Town of Wake Forest, but within the limits of Wake Forest Township. At the time of his death, and for several years prior thereto, John L. Taylor was a duly elected constable of Wake Forest Township.

On Easter Monday, 10 April, 1944, the Board of Commissioners of the Town of Wake Forest met in special session to discuss the question of, and to take steps thought necessary to insure better law enforcement in the town. Prior thereto, two men of bad reputation and with bad public records, had been coming down into the business section of the Town of Wake Forest, "about three or four blocks long" and causing a great deal of trouble,—a shot fired at one time, supposedly by one of them, and a fight in which the other took part, at another. All the trouble had taken place at night, "desperadò style." To get this situation in hand, and to stop "these fights and this misbehaviour," the Board of Commissioners authorized Mayor Holding to employ a special officer to be present in the business section of the town at night. After the meeting the mayor went to see John L. Taylor. As to this the mayor testified: "I . . . went to see Mr. Taylor, who was already a Township constable, and asked if he would serve in this capacity as a special officer to be in the business section at nights and on week-ends to help keep order." Taylor said he was engaged in the plumbing business and he couldn't accept any police employment that would interfere with his work,—said he often worked until 9 or 10 o'clock at night. However, it was then agreed that after he had finished his business, and had his supper, 8 or 9 o'clock, he would come on duty and stay until 11:30 or 12 o'clock, or as long as there was any disturbance. But if his plumbing business interfered, and he came on duty later, that would be all right with the Town. Taylor said he wasn't demanding any salary for the work. The mayor told him that "we could not expect him to give up his time in helping us without some compensation," and asked if $20.00 per week would be acceptable and "he said, 'Perfectly.'" "His services were limited to the business section." He accepted the appointment upon condition that it not be known,—saying he could be more effective in his work. It was his idea. The mayor had no objection.

Taylor took no oath of office as a special policeman or as a Town officer. "He was already qualified as constable to do the work in the rest of the Township." And he started to work on next day or so, possibly

on the 11th, and, on 30 May, 1944, was "still employed" in the capacity described by the mayor.

The Town had a regular day policeman, Chief George R. Mitchell, who worked until bedtime each night, and a night policeman, W. O. Knuckles, who came on duty at 7 o'clock and worked all night, and they did not know that Taylor was on the Town's pay roll. He wore no uniform. Pay checks for his weekly salary carried stubs on which was written, among other things, "For services as special officer."

On night of 30 May, 1944, the night policeman, W. O. Knuckles, received a message between 7 and 8 o'clock, that an officer was wanted down about a mile from the town limits of Wake Forest, where a Negro man had taken a Negro girl off in the woods and a shot had been heard and it was feared the man had killed her. Chief Mitchell, the day policeman, having gone to supper, Knuckles who knew that Taylor was a constable, inquired as to the whereabouts of Taylor, and found him at work "doing some plumbing" at a cafe on Main Street in the town. Knuckles asked Taylor, using his words, "to come with me," and Taylor said that "as quick as he got up his tools he'd be glad to go with" Knuckles, and he did in "ten minutes." They went down to the scene from whence the report came, and in a short time Taylor was shot, and died there.

Knuckles knew that Taylor had been a constable for three or four years, and during that period of time, and while Knuckles was policeman, it was his usual custom when he had a call and couldn't get any other policeman, he would "go by," or wherever he saw Taylor, and, quoting Knuckles, "I'd ask him to go with me and he always went." And on this night, Knuckles said, "I went down and told him the report I had and he said, 'I'll go as quick as I get my plumbing tools up.' He went back in the place and got them up and put them in his car and locked the door and went in my car."

The charter of the Town of Wake Forest, P. L. L. 1937, Chap. 550, Sec. 8, provides: "That the police officers of the said Town of Wake Forest shall within the corporate limits thereof and also within Wake Forest Township, Barton's Creek Township, and New Light Township, Wake County, have and exercise all the authority, rights, and powers which are now or may hereafter be conferred by law on constables."

Neither of the respondents offered any evidence—except the Board of Commissioners of Wake County, by consent of all parties, offered a certificate of its chairman to the effect that John L. Taylor was not during the year 1944, and at the time of his death on the pay roll of Wake County, or any of its departments, and that he did not draw any compensation or remuneration from Wake County.

The Hearing Commissioner thereafter filed an opinion in which he set forth Findings of Fact, among others: "1. That the claimant's deceased, John L. Taylor, sustained an injury by accident arising out of

and in the course of his employment as special officer for the Town of Wake Forest and as constable of Wake Forest Township between 7:00 and 8:00 o'clock p.m. on the night of May 30, 1944, when he was shot; that the gunshot wound was administered by a person whom Taylor was trying to arrest at the time; and that the gunshot wound was the proximate cause of his immediate death. . . . 4. That at the time of the shooting the deceased, John L. Taylor, was acting in a dual capacity as constable of Wake Forest Township and special officer for the Town of Wake Forest. 5. That as constable searching for and attempting to arrest the law violator, Taylor was not acting in a 'purely administrative' capacity." And thereupon the Hearing Commissioner stated Conclusions of Law, and made an award against all defendants.

Thereupon defendants appeal to Full Commission. And, after hearing, the Full Commission ratified and affirmed the Findings of Fact, Conclusions of Law and award by the Hearing Commissioner. However, Commissioner Kimzey dissented as to award against the County Board. And upon appeal to Superior Court the Judge Presiding, being of opinion that there is sufficient evidence upon the record to support the award against defendant Town of Wake Forest, but that there is not sufficient evidence upon the record to support the award against defendant, Board of Commissioners of Wake County, and its insurance carrier, entered judgment accordingly.

Both plaintiff and Town of Wake Forest gave notice of appeal therefrom to Supreme Court. Town of Wake Forest perfected appeal and filed brief. But plaintiff, having filed no brief on her appeal, the same was dismissed on motion of the Board of Commissioners.

*A. Jack Medlin and J. L. Emanuel for plaintiff, appellee.*

*J. M. Broughton, Lawrence Harris, and C. Woodrow Teague for Town of Wake Forest, appellant.*

*Bailey, Holding & Langston and Brassfield & Maupin for Board of Commissioners of Wake County, appellee.*

WINBORNE, J. The appeal as it comes to us presents this question: Is the evidence shown in the record on this appeal sufficient to support a finding that the death of John L. Taylor resulted from injury by accident arising out of and in the course of his employment by the Town of Wake Forest, within the meaning of the North Carolina Workmen's Compensation Act? The answer is "No."

Under the North Carolina Workmen's Compensation Act, Public Laws 1929, Chapter 120, as amended, now Chapter 97 of the General Statutes, the condition antecedent to compensation is the occurrence of any injury (1) by accident (2) arising out of and (3) in the course of employment.

*Conrad v. Foundry Co.*, 198 N. C., 723, 153 S. E., 266; *Whitley v. Highway Com.*, 201 N. C., 539, 160 S. E., 827; *Beavers v. Power Co.*, 205 N. C., 34, 169 S. E., 825; *Plemmons v. White's Service, Inc.*, 213 N. C., 148, 195 S. E., 370; *Lockey v. Cohen, Goldman & Co.*, 213 N. C., 356, 196 S. E., 312; *Wilson v. Mooresville*, 222 N. C., 283, 22 S. E. (2d), 907.

The words "out of" refer to the origin or cause of the accident, and the words "in the course of" to the time, place and circumstances under which it occurred. *Conrad v. Foundry Co., supra. Harden v. Furniture Co.*, 199 N. C., 733, 155 S. E., 728; *Hunt v. State*, 201 N. C., 707, 161 S. E., 203; *Ridout v. Rose's Stores, Inc.*, 205 N. C., 423, 17 S. E. (2d), 642; *Plemmons v. White's Service, Inc., supra; Lockey v. Cohen, Goldman & Co., supra; Wilson v. Mooresville, supra.*

It has been said that the term "arising out of employment" is broad and comprehensive and perhaps not capable of precise definition. It must be interpreted in the light of the facts and circumstances of each case, and there must be some causal connection between the injury and the employment. *Chambers v. Oil Co.*, 199 N. C., 28, 153 S. E., 594; *Harden v. Furniture Co., supra; Canter v. Board of Education*, 201 N. C., 836, 160 S. E., 924; *Walker v. Wilkins, Inc.*, 212 N. C., 627, 194 S. E., 89; *Plemmons v. White's Service, Inc., supra; Wilson v. Mooresville, supra.*

"Arising out of," as said by *Adams, J.,* in *Hunt v. State, supra,* "means arising out of the work the employee is to do or out of the service he is to perform. The risk must be incidental to the employment." *Harden v. Furniture Co., supra; Chambers v. Oil Co., supra; Beavers v. Power Co., supra; Bain v. Mfg. Co.*, 203 N. C., 466, 166 S. E., 301; *Plemmons v. White's Service, Inc., supra; Wilson v. Mooresville, supra.*

In the light of these principles, what services was John L. Taylor to perform, and what work was he to do under his employment by the Town of Wake Forest? The uncontradicted evidence is: (1) That Taylor "was already a township constable," and the mayor acting under authority from the Board of Commissioners of the Town of Wake Forest, asked him "if he would serve in this capacity as a special officer to be in the business section at nights and on week-ends to help keep order"; (2) that the business section of the town was "about three or four blocks long"; (3) that Taylor was engaged in the plumbing business, and he would not accept any police employment that would interfere with his work; (4) that after he had finished his business, and had his supper, 8 or 9 o'clock, he would come on duty and stay until 11:30 or 12 o'clock; but if his business interfered, and he came on duty later, it would be all right with the Town; (5) that "his services were limited to the business section"; and though he was not demanding any salary for his services, the Town agreed to pay him $20 a week; (6) that he took no oath of office as a

special policeman or as a town officer; "he was already qualified as a constable to do the work in the rest of the township"; he wore no uniform, and his employment by the Town of Wake Forest was kept a secret; (7) that the night policeman Knuckles, who did not know Taylor was in the employ of the Town, but did know that he was a constable, sought Taylor to go with him when the call came between 7 and 8 o'clock on 30 May, 1944, for an officer to come outside of the town limits; this was, and had been for the three or four years Taylor was a constable the usual custom of the policeman when he had a call and could not get another police officer; on this night Taylor was at work "doing some plumbing" at a cafe on the main street in the town; and (8) the place to which the night policeman was called and to which Taylor went with him, was more than a mile outside the town limits.

The evidence clearly shows that the Town of Wake Forest sought the services of Taylor in his capacity as a township constable, and engaged him to do specific work within the limits of a certain territory and during certain hours. The evidence also shows clearly that the mortal injury which Taylor received did not occur in the performance of the specific work he was engaged to do within the limits of the territory to which his employment by the Town of Wake Forest related.

It may be noted that in each township in this State a constable shall be elected by the voters thereof. G. S., 151-1, N. C. Const., Art. 4, Sec. 24; that all constables, before they shall be qualified, shall take oaths prescribed for public officers as well as an oath of office, G. S., 151-2; and that "constables are . . . invested with and may execute the same power and authority as they have been by law heretofore vested with, and have executed." G. S., 151-7. And this Court has held the powers and duties of constables are co-extensive with the limits of the county within which they are elected. See *S. v. Corpening*, 207 N. C., 805, 178 S. E., 564, where the case of *Dade v. Morris*, 7 N. C., 146, decided in 1819, is cited for statement of the law prior to our constitutional and statutory provisions. See also *Wilson v. Mooresville, supra.*

Such being the powers an duties of a constable, to hold that since the Town of Wake Forest makes a special arrangement with a township constable to do a specific job in certain territory within the corporate limits of the Town, it constitutes such constable its employee wherever he may go in the performance of his duty as such in Wake County, in which the Town is located, would present a rather anomalous position.

Hence, for reason stated hereinabove the judgment below is
Reversed.