82 S.E.2d 410 (1954)
240 N.C. 399
LEWTER et al.
v.
ABERCROMBIE ENTERPRISES, Inc. et al.
No. 755.
Supreme Court of North Carolina.
June 4, 1954.
*412 W. J. Brogden, Jr., Durham, for plaintiffs-appellees.
Egbert L. Haywood, Emery B. Denny, Jr., Chapel Hill, for defendants-appellants.
*413 PARKER, Justice.
On appeal from a Superior Court's judgment affirming or reversing an award made by the Full Workmen's Compensation Commission, we review only such exceptive assignments of error as are properly made to the judgment of the Superior Court alone. Glace v. Pilot Throwing Co., 239 N.C. 668, 80 S.E.2d 759; Worsley v. S. & W. Rendering Co., 239 N.C. 547, 80 S.E.2d 467; Rader v. Queen City Coach Co., 225 N.C. 537, 35 S.E.2d 609. Our review is limited to a consideration of the assignments of error as to matters of law in the trial in the Superior Court. Worsley v. S. & W. Rendering Co., supra; Sprinkle v. City of Reidsville, 235 N.C. 140, 69 S.E.2d 179; Wilson v. City of Charlotte, 206 N.C. 856, 175 S.E. 306.
After the Superior Court declined to make a ruling on each of the 31 objections taken and preserved in the proceedings before the Full Commission, the appellants excepted to the action of that court in declining to make a ruling on each of the 31 objections. The lower court then entered judgment affirming the award, and the appellants appealed. The appellants excepted to the judgment, and this exception is their assignment of error No. 22. The appellants have 21 assignments of error as to the refusal of the Superior Court to rule upon each of their 31 objections to the proceedings before the Full Commission.
The plaintiffs contend that the appellants have failed to base their first 21 assignments of error on specific rulings of the Superior Court; that, therefore, their only assignment of error is to the signing of the judgment. This contention is not supported by the Record, for the appeal from the Superior Court points out, and designates in detail and with particularity in the first 21 assignments of error the particulars in which errors of law are assigned. It seems to be a substantial compliance with our practice, so as to present for review appellants' first 21 assignments of error. Fox v. Mills, Inc., 225 N.C. 580, 35 S.E.2d 869. In Worsley v. S. & W. Rendering Co., supra [239 N.C. 547, 80 S.E.2d 470], it is said in reference to appeals from the Industrial Commission to the Superior Court the Judge of that court "should overrule or sustain each and every exception addressed to allege errors of law thus designated, so that the party aggrieved by his rulings may except thereto and present the question to this Court for review." See also Stewart v. Duncan, 239 N.C. 640, 80 S.E.2d 764.
We do not consider it necessary to remand this proceeding because the Superior Court Judge declined to rule upon the 31 requests for rulings for the reason that he was of the opinion that there is competent evidence in the Record to support the conclusions of law of the Full Commission, and a ruling on each request was unnecessary, which in reality was an overruling of each and all of the 31 requests.
The defendants' assignments of error challenge the validity of the Superior Court on two grounds: (1) That the decision of the Full Commission is not sustained by its findings of fact; and (2) that such findings of fact are not supported by the evidence before the Commission. Anderson v. Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265.
When the assignments of error bring up for review the findings of fact of the Commission, we review the evidence to determine as a matter of law whether there is any competent evidence tending to support the findings; if so, the findings of fact are conclusive on us. Vause v. Vause Farm Equipment Co., 233 N.C. 88, 63 S.E.2d 173; Riddick v. Richmond Cedar Works, 227 N.C. 647, 43 S.E.2d 850; Hildebrand v. McDowell Furniture Co., 212 N.C. 100, 193 S.E. 294.
If a finding of fact is a mixed question of fact and law, it is conclusive also on us, if there is sufficient evidence to sustain the facts involved. If a question of law alone, we review. Perley v. Ballenger Paving Co., 228 N.C. 479, 46 S.E.2d 298; Beach v. McLean, 219 N.C. 521, 14 S.E.2d 515; Thomas v. Raleigh Gas Co., 218 N.C. 429, 11 S.E.2d 297.
*414 To establish their claim plaintiffs must show (1) death resulting from an injury by accident, (2) arising out of and in the course of decedent's employment by the defendant, and (3) not including a disease in any form, except where it results naturally and unavoidably from the accident. G.S.N.C. § 97-2(f, j); Matthews v. Carolina Standard Corp., 232 N.C. 229, 60 S.E.2d 93; Withers v. Black, 230 N.C. 428, 53 S.E.2d 668; Taylor v. Town of Wake Forest, 228 N.C. 346, 45 S.E.2d 387. The legislative intent seems clear that our Workmen's Compensation Act is an industrial injury act, and not an accident and health insurance act. We should not overstep the bounds of legislative intent, and make by judicial legislation our Compensation Act an Accident and Health Insurance Act.
Our Compensation Act uses the words "injury by accident arising out of and in the course of the employment". G.S.N.C. § 97-2(f). We said in Bell v. Dewey Brothers, Inc., 236 N.C. 280, 72 S.E.2d 680, 682, "`Arising out of' means arising out of the work the employee is to do, or out of the service he is to perform. The risk must be incidental to the employment. Hunt v. State [201 N.C. 707, 161 S.E. 203]; Berry v. Colonial Furniture Co. [232 N.C. 303, 60 S.E.2d 97]."
Adams, J., said in Hunt v. State, supra [201 N.C. 707, 161 S.E. 204], "`in the course of' refer to the time, place, and circumstances under which the accident occurs, and the words `out of' to its origin and cause"; words quoted many times in our decisions, e. g., Vause v. Vause Farm Equipment Co., supra.
Where the death cannot fairly be traced to the employment as a contributing proximate cause, it does not arise out of the employment. Bryan v. T. A. Loving Co. & Associates, 222 N.C. 724, 24 S.E.2d 751; Lockey v. Cohen, Goldman & Co., 213 N.C. 356, 196 S.E. 342; Walker v. J. D. Wilkins, Inc., 212 N.C. 627, 194 S.E. 89.
For the death of Mrs. Lewter to be compensable, her death must have resulted from an injury by accident arising out of and in the course of her employment. Berry v. Colonial Furniture Co., supra; Gilmore v. Hoke County Board of Education, 222 N.C. 358, 23 S.E.2d 292; McGill v. Town of Lumberton, 215 N.C. 752, 3 S.E.2d 324.
In Neely v. City of Statesville, 212 N.C. 365, 193 S.E. 664, 665, a fireman of the defendant fighting a fire came out of the attic of a burning building to a landing at the head of a stairway to seek fresh air. Shortly thereafter he collapsed, and died from a heart attack. The deceased for more than two years had suffered from a chronic cardiac condition. We held there was no evidence of an accident saying "The work in which the deceased was engaged was the usual work incident to his employment."
Ordinarily a death from heart disease is not an injury by accident arising out of and in the course of the employment, nor an occupational disease, so as to be compensable under our statute. Duncan v. City of Charlotte, 234 N.C. 86, 66 S.E.2d 22; West v. North Carolina Department of Conservation and Development, 229 N.C. 232, 49 S.E.2d 398; Neely v. City of Statesville, supra. In the West case a game warden died of a coronary occlusion shortly after he had arrested three persons for fishing without a license, and had taken them before a magistrate, where they were fined. The deceased looked rather flushed; he seemed high strung. A doctor testified the exertion or excitement of the trial and the other incidents of the morning could easily have caused the coronary occlusion and resulting death. The Industrial Commission denied recovery, and in affirming the denial we said [229 N.C. 232, 49 S.E.2d 399]: "The record is devoid of any evidence tending to show that the deceased died as the result of an injury by accident."
In Gabriel v. Town of Newton, 227 N.C. 314, 42 S.E.2d 96, we affirmed the Industrial *415 Commission's award in a death from heart disease. The facts were as follows: A policeman in good health arrested a young man drunk, who violently resisted. The jail elevator was out of order, and the deceased and another officer carried the prisoner up three flights of steps. The deceased collapsed with an acute dilation of the heart due to the unusual exertion; this heart injury was chronic and progressive. Some ten months later the deceased suffered a fatal heart attack.
The place of disease in Workmen's Compensation Laws is a troublesome question, with most of the difficulty stemming from the accident requirement. Apparently, a majority of jurisdictions hold, if the strain of the employee's usual exertions causes death or collapse from heart weakness, back weakness, hernia and the like, the injury is compensable. Larson Workmen's Compensation Law, Vol. One, p. 516 et seq., where the cases are cited. See also 58 Am.Jur., p. 756. It seems a very substantial minority of jurisdictions require a showing that the exertion was in some way unusual or extraordinary. Larson, ibid, p. 516 et seq., where the cases are cited; 71 C.J., Workmen's Compensation Acts, p. 619.
From our cases cited above it is clear that in heart cases our decisions require a showing that the exertion was in some way unusual or extraordinary. These cases are in accord with ours: Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017; Cleary Brothers Const. Co. v. Nobles, 156 Fla. 408, 23 So.2d 525; Brooks-Scanlon, Inc., v. Lee, Fla., 44 So.2d 650; O'Neil v. W. R. Spencer Grocer Co., 316 Mich. 320, 25 N.W.2d 213; Stanton v. Minneapolis Street Ry. Co., 195 Minn. 457, 263 N.W. 433; State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40; Hamilton v. Huebner, 146 Neb. 320, 19 N.W.2d 552, 163 A.L.R. 1; Rose v. City of Fairmont, 140 Neb. 550, 300 N.W. 574; Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156, 46 A.2d 439, affirmed 135 N.J.L. 352, 52 A.2d 61; Temple v. Storch Trucking Co., 2 N.J.Super. 146, 65 A.2d 70; Seiken v. Todd Dry Dock, Inc., 2 N.J. 469, 67 A.2d 131; Cope v. Philadelphia Toilet Laundry & Supply Co., 167 Pa.Super. 205, 74 A.2d 775; Powell v. Hills Garage, 150 Pa.Super. 17, 27 A.2d 773; Good v. Pennsylvania Dept. of Property and Supplies, 346 Pa. 151, 30 A.2d 434; Cooper v. Vinatieri, 73 S.D. 418, 43 N.W.2d 747; Frank v. Chicago, M. & St. P. Ry. Co., 49 S.D. 312, 207 N.W. 89; Gerich v. Republic Steel Corp., 153 Ohio St. 463, 92 N.E.2d 393; Crispin v. Leedom & Worrall Co., 341 Pa. St. 325, 19 A.2d 400; Manikowski v. Morris Run Coal Mining Co., 163 Pa.Super. 118, 60 A.2d 344; Hiber v. City of St. Paul, 219 Minn. 87, 16 N.W.2d 878; Sokness v. City of Virginia, 231 Minn. 215, 42 N.W.2d 551.
The hearing Commissioner cited in support of his opinion Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912, 13 A.L.R. 438, and Crosby v. Thorp, Hawley Co., 206 Mich. 250, 172 N.W. 535, 6 A.L.R. 1253. Both cases were decided by divided courts, and Maine apparently follows a different rule from ours. Larson Workmen's Compensation Law, Vol. One, p. 521.
Plaintiffs' evidence tended to show these facts. Mrs. Lewter consulted a doctor for high blood pressure on 29 January 1948. She was then overweight, and her blood pressure was 230/110. There had been a history of high blood pressure in her family. From then on she consulted two doctors, and received treatment; she had high blood pressure several years before her death. On the afternoon of 11 December 1951 she was engaged in her usual work as cashier in the ticket booth of defendant's theater. A passer-by in the street told Mrs. Ferrell the theater was on fire, and she told Mrs. Lewter. The fire was in the ladies' rest room on the second floor, which is separated by a large wall from where the people sit. Three employees were present, Mrs. Lewter, Mrs. Ferrell at the candy bar, and a man in the projector roof. A small number of spectators were in the theater. Mrs. Lewter went in the theater, walked up and down the aisles and up in the balcony, told the spectators there was a fire, and asked them *416 to leave. The spectators left calmly and without undue haste. Mrs. Lewter went back in the box office, and gave the spectators refunds or passes. In giving out the refunds Mrs. Lewter was excited; she got the money mixed up in making the refunds.
A policeman testified the spectators were out of the theater when he arrived. He saw Mrs. Lewter twice run back and forth from the office to the cashier's box. He saw some tickets in her hands. In his opinion she was very highly excited. The office is about 15 or 20 feet from the cashier's box. When this officer left, the firemen were clearing up the hose preparing to leave. Mrs. Lewter had not been stricken then.
The fire was in the ladies' rest room on the second floor. As to the building, only the window frame and the window in the rest room were damaged, rugs and draperies in the rest room were damaged. There were no flames in the theater part or the lobby. The smoke was upstairs where the ladies' rest room was, and in the stairway, banking back into the lobby. The damage was about $6,000. The assistant chief of the Durham Fire Department, a witness for plainitffs, testified, our record has the fire classified by someone smoking, and dropping a cigarette into a stuffed chair, setting off the curtains.
About one hour after Mrs. Lewter was told of the fire, she collapsed unconscious, apparently in the ticket booth. The following morning, without regaining consciousness, she died in a hospital. The cause of her death was cerebral hemorrhage, due to hypertension.
There was medical evidence to the effect that the fire and Mrs. Lewter's excitement would have aggravated her condition to such an extent as to cause the cerebral hemorrhage from which she died.
In our opinion, there is no evidence tending to show that Mrs. Lewter died as the result of an injury, as those words are used in our Workmen's Compensation Act. This is in accord with our decisions in Neely v. City of Statesville, supra; Gabriel v. Town of Newton, supra; West v. North Carolina Department of Conservation and Development, supra; Duncan v. City of Charlotte, supra.
It is common knowledge that blood vessels in the human system, weakened by disease, often burst, even when the victim is sleeping in bed. The evidence is clear that Mrs. Lewter's death cannot fairly be traced to her employment as a contributing proximate cause. It seems plain that because of Mrs. Lewter's high blood pressure for many years, the time appointed for her to die had come, irrespective of the fire; the finger of death touched her, and she sleeps till the Great Day of Judgment.
The judgment of the lower court is
Reversed.