MAURICE ROSS, EMPLOYEE-PLAINTIFF v. YOUNG SUPPLY COMPANY, EM-
PLOYER-DEFENDANT, AND HARTFORD ACCIDENT & INDEMNITY INSUR-
ANCE COMPANY, CARRIER-DEFENDANT

No. 8310IC1251

(Filed 4 December 1984)

1. **Master and Servant § 55.3— workers' compensation—injury by accident**

   Plaintiff traveling salesman suffered an injury by accident when his leg
   was broken while he was getting into his wife's automobile in preparation for
   making sales calls on behalf of his employer where the evidence showed that
   plaintiff usually drove his own vehicle in making sales calls; plaintiff decided to
   drive his wife's automobile because she had complained about the way it was
   running; and as plaintiff was maneuvering his large frame into his wife's
   automobile in a different manner than normal to compensate for the fact that
   the driver's seat was pushed all the way forward, plaintiff's foot slipped on the
   frozen ground and his leg was broken.

2. **Master and Servant § 55.5— workers' compensation—injury arising out of em-
   ployment**

   Plaintiff salesman's accident resulting in a broken leg while he was get-
   ting into his wife's automobile in preparation for making sales calls on behalf
   of his employer arose out of his employment although he was driving his wife's
   automobile rather than his own vehicle in order to check its running condition.

3. **Master and Servant § 55.6— workers' compensation—injury in course of em-
   ployment**

   Plaintiff salesman's accident while getting into his wife's automobile at his
   own home in preparation for making sales calls on behalf of his employer arose
   in the course of plaintiff's employment.

4. **Evidence § 50.2— expert medical testimony—cause of injury—statements by
   plaintiff during treatment**

   Statements made by plaintiff to a physician in the course of treatment and
   diagnosis were proper evidence upon which the physician could base his expert
   opinion that plaintiff's broken leg was caused by plaintiff's slipping while
   entering an automobile. G.S. 8-58.12.

5. **Master and Servant § 56— workers' compensation—cause of injury**

   The evidence was sufficient to show that plaintiff salesman's broken leg
   suffered when his foot slipped on the frozen ground as he attempted to enter
   an automobile in a different way than normal because the seat had been
   pushed forward was the result of a risk of his employment although plaintiff
   suffered from a disease which caused affected bones to be more fragile and
   subject to breaking. G.S. 97-2(6).

APPEAL by defendants from the North Carolina Industrial Commission. Opinion and award by Full Commission filed 16 August 1983. Heard in the Court of Appeals 21 September 1984.

This is a workers' compensation claim in which plaintiff-employee seeks workers' compensation benefits for an injury allegedly suffered in an accident arising out of and in the course of his employment.

Plaintiff, a traveling salesman employed by defendant Young Supply Company (Young), was injured while getting into his wife's automobile in preparation for making sales calls on behalf of his employer. Plaintiff usually drove his own automobile, a Honda station wagon. However, plaintiff decided to drive his wife's automobile, a Ford Maverick, on his sales calls in Charlotte on 26 January 1981.

Plaintiff is six feet, two inches tall and weighs approximately two hundred twenty-five pounds. The front seat of the Ford Maverick was pushed up and under the steering wheel to accommodate the smaller frame of his wife. The temperature was in the teens and there was a light frost on the lawn. Plaintiff was wearing a heavy coat. As plaintiff maneuvered into the confines of the Ford Maverick, he placed his right leg in the automobile but his left foot remained on the ground with his left leg bearing most of his weight. As he continued to maneuver into the automobile, he slipped and his left leg gave way. The leg was broken.

In the course of treatment for plaintiff's broken leg Dr. Richard Wrenn at Miller Clinic, Charlotte, North Carolina, diagnosed him as having Paget's disease, a malady that causes bones affected to be more fragile and subject to breakage. Plaintiff was unaware, prior to this diagnosis, that he was afflicted with Paget's disease. Dr. Wrenn's examination revealed that the leg fracture occurred in an area affected by this disease.

On 2 September 1982, the Honorable John Charles Rush, Deputy Commissioner, held that plaintiff did not, at the time complained of, sustain an injury by accident arising out of and in the course of his employment by Young and denied plaintiff benefits under the Workers' Compensation Act. Plaintiff appealed to the Full Commission. On 16 August 1983, the Full Commission held that the decision reached by Deputy Commissioner Rush was in-

correct in that the greater weight of the evidence showed that plaintiff did sustain an injury by accident arising out of and in the course of his employment as a traveling salesman for defendant-employer Young. The Full Commission awarded compensation for all medical expenses incurred as a result of the injury by accident on 26 January 1981, temporary total disability at the rate of $118.87 per week for 22.29 weeks and permanent partial disability at the rate of $118.97 per week for 20 weeks beginning in January 1982. The Full Commission also awarded attorneys' fees equal to 25% of all compensation paid except medical expenses. Defendants appealed.

*Joseph B. Roberts, III, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner, Feerick and Kincheloe, by Hatcher Kincheloe and Edward W. Hedrick, for defendant-appellants.*

EAGLES, Judge.

All assignments of error can be resolved by a determination of whether the injury, suffered by plaintiff on 26 January 1981, was the result of an accident arising out of and in the course of plaintiff's employment by defendant Young.

We note that defendants do not contend that the findings and conclusions of the Full Commission are not supported by competent evidence in the record so as to make those findings and conclusions erroneous and contrary to law.

Findings of fact made by the Commission are conclusive on appeal when supported by competent evidence, even when there is evidence to support a contrary finding of fact. *Walston v. Burlington Industries*, 304 N.C. 670, 285 S.E. 2d 822 (1982). Defendants' arguments on appeal show that there is evidence in the record which could support findings of fact contrary to those reached by the Full Commission. However, absent a showing that the facts and conclusions found by the Full Commission are not supported by competent evidence, defendants may not prevail on appeal.

In our discretion, we have examined the record to determine whether there is competent evidence to support the Full Commission's findings of fact and conclusions of law. We hold that there is such competent evidence.

I

[1]   The crucial findings of fact of the Full Commission as to whether there was an accident as contemplated by the Workers' Compensation Act are contained in paragraphs 1-5 of its findings of fact. In deciding whether there was an accident, the only question on appeal is whether there was "an unlooked for and untoward event" or "the interruption of the routine work and the introduction thereby of unusual conditions." *Gladson v. Piedmont Stores/Scotties Discount Drug Store*, 57 N.C. App. 579, 292 S.E. 2d 18, *rev. denied*, 306 N.C. 556, 294 S.E. 2d 370 (1982).

As set out in the findings of fact, plaintiff was a 55 year old man who was a traveling salesman and used his own vehicle in his travels on behalf of his employer. For over four years, plaintiff had driven his 1977 Honda station wagon, calling on various beauty and barber shops in his sales territory. Plaintiff worked out of his home and left there regularly to make his sales calls. On the morning in question he decided to drive his wife's automobile, a 1973 Ford Maverick, because she was complaining about the way it was running. He rarely drove his wife's automobile and had not driven it on a sales call in two or three years. The manner of getting into his wife's automobile was different than the way he normally entered his own automobile. Plaintiff is a large-framed man, six feet, two inches tall and weighing approximately two hundred twenty-five pounds. While he normally has no difficulty getting into his Honda station wagon, getting into his wife's Ford Maverick required plaintiff to maneuver his large frame into an automobile in which the front seat was pushed all the way forward. Instead of merely sitting down into the front seat, plaintiff was forced to wedge himself under the steering wheel by placing his right leg into the automobile while placing most of his two hundred twenty-five pound weight on his left leg which remained outside the automobile. This required a twisting motion of the body which caused plaintiff to slip on the frozen ground.

There was evidence properly before the Full Commission in the form of testimony from Dr. Wrenn tending to show that plaintiff "either was getting in or out of his car and twisted his leg and slipped and broke his leg . . . [h]e was twisting, I think, getting into or out of his car." This testimony was corroborated and

clarified by plaintiff who testified that he was getting into the automobile at the time of his injury.

In a similar case, *Coffey v. Automatic Lathe Cutterhead*, 57 N.C. App. 331, 291 S.E. 2d 357, *rev. denied*, 306 N.C. 555, 294 S.E. 2d 222 (1982), the claimant, a traveling salesman, felt a sharp pain as he reached across his front seat to dislodge a clipboard from between the seat and the passenger-side front door. At the time of his injury, claimant's automobile was parked, the driver's door was open and claimant's left foot was out of the car and planted upon the ground. The court held that the clipboard being off the front seat and not in easy reach, served to interrupt the claimant's usual routine of work and introduced unusual conditions which were likely to result in unexpected consequences. In particular, we held "the accident suffered by [the claimant] was the *subjecting of his torso and back to significant and unusual stress due to the strained position he assumed in reaching for his clipboard. His injury was caused by this accident.*" 57 N.C. App. 335, 291 S.E. 2d at 360. Further, we noted that the claimant in *Coffey* was not "engaged merely in exiting his car *in the manner in which he normally exited his car.*" (Emphasis added.) 57 N.C. App. at 335, 291 S.E. 2d at 359.

The facts here tend to show that plaintiff was not entering his automobile in the manner in which he normally entered his automobile. In fact he was maneuvering his large frame into a different automobile than his usual vehicle and was doing so in a different manner than normal to compensate for the fact that the driver's seat was pushed all the way forward. Added to this is evidence that plaintiff slipped as well. The Full Commission's finding of fact is supported by competent evidence.

## II

[2] Next, we consider whether the accident arose out of and in the course of plaintiff's employment by defendant Young. The terminology "arising out of" and "in the course of" employment is not used disjunctively and they are not synonymous. Both conditions must be present before compensation can be awarded. The words "arising out of" refer to the origin or cause of the accident. The employee must be about his master's business. *Taylor v. Wake Forest*, 228 N.C. 346, 45 S.E. 2d 387 (1947). The words "in the course of" refer to the time, place, and circumstances under

which an accident occurred. The accident must occur during the period and place of employment. *Plemmons v. White's Service*, 213 N.C. 148, 195 S.E. 370 (1938). Defendant argues that plaintiff was not about his master's business. Rather, defendant contends that plaintiff was performing personal business, driving his wife's automobile to check its running condition. We disagree.

While it is true that plaintiff was driving his wife's automobile instead of his usual car, and as a result would be able to check its running condition, plaintiff was about his master's business as well, going from his home to Charlotte to make sales calls for his employer. We recognize that an injury to an employee, while he is performing acts for the benefit of third persons, is not compensable *unless* the acts benefit the employer to an appreciable extent. There can be no doubt that plaintiff's driving of his wife's automobile to make his sales calls would have benefitted his employer just as if plaintiff had driven his own automobile to make these calls. See, *Guest v. Brenner Iron and Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596 (1955). Based on the record before us, there was competent evidence from which the Full Commission could find and conclude that plaintiff's accident "arose out of" his employment.

[3] Defendant next argues that the accident did not arise "in the course of" plaintiff's employment. The basis of this argument is that plaintiff was still at home preparing to travel to places where he would engage in his occupation. We disagree.

We recognize that, as a general rule, accidents sustained while an employee is going to and from work are not within the course of the employment. *Humphrey v. Quality Cleaners and Laundry*, 251 N.C. 47, 110 S.E. 2d 467 (1959). However, there are several exceptions to this general rule. If travel is contemplated as a part of the work, accident in travel is compensable. *Yates v. Hajoca Corporation*, 1 N.C. App. 553, 162 S.E. 2d 119 (1968). This exception is often referred to as the "traveling salesman's exception" to the "going and coming rule." Travel in plaintiff's own transportation was obviously contemplated by the employer Young as part of the work performed by plaintiff. We hold that under the facts of this case getting into an automobile prior to driving out of one's driveway to make sales calls is a necessary part of traveling and goes beyond mere preparation to travel. Ac-

cordingly, there was competent evidence from which the Full Commission could find and conclude that plaintiff's accident arose "in the course of" plaintiff's employment.

## III

[4]  Finally, we examine the issue of causation. The basis of defendant's argument is that the injury was caused by plaintiff's pre-existing Paget's disease and that there was insufficient evidence to support Dr. Wrenn's opinion that the injury was caused by plaintiff's slipping while entering the automobile. Dr. Wrenn's testimony was taken in an earlier proceeding on 12 May 1982 before the Honorable Linda Stephens, Deputy Commissioner. Dr. Wrenn testified in response to the following hypothetical question:

> And Doctor, let me ask you a hypothetical question. Assuming that the Commission finds from the facts I'll give you in the question, and based upon your own physical examination of Mr. Ross, the history he gave you and your own treatment of him and x-rays taken, that he usually operated his own vehicle as a traveling salesman, but on this occasion was going to use his wife's vehicle, which was somewhat awkward for him to get into, and on this morning the ground was frozen and in the process of getting in under the front steering wheel, when his body was twisted, he slipped and suffered severe pain to his left leg and was immobilized at that time and was taken by a neighbor directly to your office, and that based upon those facts and other facts that you have testified about and that you have to your own knowledge, do you have an opinion satisfactory to yourself and to a reasonable degree of medical certainty as to whether or not the fracture sustained by Dr. Ross on or about January 26, 1981, could or might have been caused by this trauma or the position that he assumed or slipping that he has testified about?

Dr. Wrenn answered over objection that the injury was caused by the trauma or position plaintiff assumed or plaintiff's slipping as he entered the automobile.

Defendant argues that plaintiff did not testify that he slipped and that Dr. Wrenn's testimony indicated that he was not sure

whether or not plaintiff had slipped. Defendant contends that plaintiff's slipping was not a fact in evidence and a hypothetical question incorporating that fact was improper. We disagree.

We note that hypothetical questions are no longer required to elicit an opinion from an expert witness. G.S. 8-58.12. This statute was in effect at the taking of Dr. Wrenn's testimony on 12 May 1982. However, hypothetical questions are still permitted. A proper hypothetical question lists facts which may be found by the finder of fact and asks if, assuming that the fact finder will so find, the expert has an opinion satisfactory to himself on the subject of the inquiry. To be acceptable, the question must list only such facts as are directly in evidence or may justifiably be inferred therefrom. 1 Stansbury, North Carolina Evidence, Section 137 (Brandis Rev. 1982).

A close examination of the record reveals that Dr. Wrenn's testimony was to the effect that plaintiff told him that he had slipped "either getting in or out of his car" and twisted his leg. Dr. Wrenn was only "not sure" as to whether plaintiff was getting into or out of his car at the time he slipped. Dr. Wrenn's testimony indicates no confusion as to whether plaintiff slipped. These statements by plaintiff were made to Dr. Wrenn in the course of treatment and diagnosis and were proper evidence upon which Dr. Wrenn could base his expert opinion.

[5] Defendant further argues that plaintiff's injury was caused solely by his idiopathic condition, diagnosed as Paget's disease, and cannot fairly be traced to the employment since plaintiff would have been equally exposed apart from employment. The basis of defendant's argument is that entering an automobile in which the seat has been pulled forward is a risk which is common to the public at large. On the facts of this case, we disagree. If we were to accept defendant's contentions, traveling salesmen could never recover for accidents in their travel since those risks are inherent in traveling and are common to the public at large. The distinction in this case is that as a condition of employment, plaintiff was required to use his own personal transportation and was required to travel from his home throughout his territory to make sales on behalf of his employer. To travel and use his own transportation here meant that plaintiff had to maneuver into his wife's automobile on the day in question. The difficulty en-

countered by plaintiff in attempting to maneuver his large frame into his wife's automobile was a risk which plaintiff was obliged to undertake in order to make his sales calls and further his employer's interests. Unlike the public at large, plaintiff incurred his injury as a result of a risk attributable to his travel which was contemplated as part of his employment.

As to causation, Dr. Wrenn testified that "[w]ith Paget's disease, it would not be likely that the bones would break on their own accord without some trauma or mishap."

Where an injury is associated with any risk attributable to the employment, compensation should be allowed, even though an employee may have suffered from an idiopathic condition which precipitated or contributed to the injury. G.S. 97-2(6); *Hollar v. Montclair Furniture Company, Inc.*, 48 N.C. App. 489, 269 S.E. 2d 667 (1980). In this case there is competent evidence of a risk attributable to plaintiff's employment and an injury as a result of that risk. For all of the reasons herein, we find no error in the findings and conclusions of the Full Commission.

Our decision in this case supports the rule that the Workers' Compensation Act is to be liberally construed and applied to accomplish the humane purposes for which it was enacted, compensation for injured employees.

No error.

Judges WEBB and BRASWELL concur.