The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing, as
 STIPULATIONS
1. On February 7, 1996, the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. Defendant was self-insured.
4. Defendant was the predecessor corporation of UNICCO Service Company.
5. The nature of plaintiff's injuries were a fractured and bruised left wrist and tenosynovitis of the left wrist.
6. Plaintiff's average weekly wage was $712.55.
7. Plaintiff continues to be employed by defendant and is presently earning wages equal to or greater than the wages he earned prior to his injury.
8. Plaintiff slipped and fell on ice in the parking lot of the Bridgestone/Firestone plant on February 7, 1996. As a result of his fall, plaintiff missed work from August 5, 1996 through September 16, 1996 and sustained a seventeen percent (17%) permanent impairment of his left hand.
9. Plaintiff's Exhibits 1 through 7 are admitted into evidence.
10. Defendant's Exhibits 1 through 3 are admitted into evidence.
 ***********
Based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was forty years old. He was a high school graduate. He began working for defendant's predecessor on January 5, 1981.
2. Defendant's sole business purpose was to provide services, primarily maintenance and janitorial services, to Bridgestone/Firestone at its plant in Wilson, North Carolina. The business relationship of defendant and Bridgestone/Firestone was governed by a contract entered between them on August 1, 1988. Under the contract, Bridgestone/Firestone dictated the work that was to be performed by defendant's employees.
3. Bridgestone/Firestone provided a parking lot for the use of its employees, defendant's employees, and all other contractors' employees. The parking lot was owned by Bridgestone/Firestone. The parking lot was surrounded by a fence. To gain admittance to the parking lot, defendant's employees, Bridgestone/Firestone employees, and other contractors' employees were required to pass through a checkpoint. There was a guardhouse at the checkpoint where the employees were required to produce a photo identification card and parking sticker. The parking lot was not open to the public. The security personnel who worked in the guardhouse were employees of an independent security agency. These employees controlled entry into the parking lot. Defendant's employees were required to abide by Bridgestone/Firestone's parking policy. If Bridgestone/Firestone directed that defendant's employees park elsewhere, defendant would instruct its employees to park elsewhere.
4. Defendant's employees were responsible for maintaining the parking lot when so directed by Bridgestone/Firestone. Defendant's employees repaired the parking lot fence and fence posts. They also repaired lights, hung signs, picked up litter and mowed grass in and around the parking lot. At times, defendant's employees had been responsible for clearing ice or snow from the parking lot and adjacent walkways. Bridgestone/Firestone bore all expenses associated with maintenance of the parking lot. Bridgestone/Firestone supplied all equipment used to maintain the parking lot. Other contractors had performed maintenance work on the parking lot which included paving, lighting, and repairs on the parking lot.
5. During his employment by defendant, defendant's predecessor, and defendant's successor, plaintiff worked exclusively at the Bridgestone/Firestone plant in Wilson, North Carolina. Plaintiff worked in more than one position while so employed, but all work performed was for Bridgestone/Firestone.
6. Defendant did not own or lease any property located at the Bridgestone/Firestone plant site.
7. On or before February 7, 1996, there was a winter storm in Wilson, North Carolina that covered the roadways and paved surfaces with ice. On that date, defendant's employees undertook to scrape away the ice that covered the parking lot surface using a tractor equipped with a blade.
8. On February 7, 1996, plaintiff spoke to his supervisor prior to going to Bridgestone/Firestone's premises. Plaintiff's supervisor did not instruct plaintiff to report to work. He did not instruct plaintiff not to report to work. Plaintiff's supervisor did ask plaintiff to report to work if he could do so safely. Upon arriving in the parking lot, plaintiff parked his car and stepped out of his vehicle. When he stepped out of his vehicle, he slipped and fell. As a result of his fall, plaintiff sustained a fractured and bruised left wrist and tenosynovitis of his left wrist. Plaintiff eventually underwent surgery as a result of his injury. Plaintiff sustained a seventeen percent (17%) permanent impairment of his left hand as a result of the incident on February 7, 1996.
9. As a result of the incident on February 7, 1996, plaintiff was incapable of earning wages from defendant or any other employer from August 5, 1996 through September 16, 1996, when he returned to work earning wages equal to or greater than the wages he earned prior to February 7, 1996.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. The phrase "in the course of employment" refers to the time, place and circumstances in which the injury occurred.Culpepper v. Fairfield Sapphire Valley, 93 N.C. App. 242,377 S.E.2d 777 (1989). "`Time and place' do not necessarily mean the regular hours of employment and on the premises of the employer."Brown v. Service Station, 45 N.C. App. 255, 257,262 S.E.2d 700, (1980). With respect to time, the course of employment begins a reasonable time before work begins and ends a reasonable time after work ends. Harless v. Flynn, 1 N.C. App. 448, 162 S.E.2d 47
(1968). "If the employee is doing work at the direction and for the benefit of the employer, the time and place of the work are for the benefit of the employer and a part of the employment of the employee." Brown at 257. "In respect to `circumstance', compensable accidents are those sustained while the employee is doing what a man so employed may reasonably do within a time he is employed, at a place he may reasonably be during the time to do that thing." Id.
As a general rule, injuries occurring while an employee is going to or coming from work are not compensable. Barham v. FoodWorld, Inc., 300 N.C. 329, 266 S.E.2d 676 (1980). However, when an employee is injured while going to or coming from work, but is on premises owned, controlled, or maintained by the employer, the injury is compensable. Royster v. Culp, Inc., 343 N.C. 279,470 S.E.2d 30 (1996). When travel is contemplated as part of the employee's work, injuries occurring during travel are compensable.Ross v. Young Supply, inc., 71 N.C. App. 532, 322 S.E.2d 648
(1984). This exception is referred to as the "traveling salesman's exception" to the going and coming rule. Id.
In this case, defendant's sole business purpose was to provide personnel to work on Bridgestone/Firestone's premises, including work maintaining the parking lot where plaintiff was injured. Plaintiff was employed by defendant to perform services for Bridgestone/Firestone within the confines of Bridgestone/Firestone's premises. None of his employment duties were performed at defendant's place of business or on premises owned, maintained, or controlled by defendant. Plaintiff's work for defendant required him to go to and enter Bridgestone/Firestone's premises. Defendant designated the times that plaintiff was to be Bridgestone/Firestone's premises and where he was to park upon arriving on Bridgestone/Firestone's premises, namely the Bridgestone/Firestone parking lot. The Bridgestone/Firestone parking lot was not open to the public. Although defendant's employees "maintained" the premises of Bridgestone/Firestone and the independent security agency "controlled" the parking lot, these kinds of "maintenance" and "control" are not, in the opinion of the undersigned, the type of maintenance and control referred to in the foregoing authorities. These contractors' duties to "maintain" and "control" were contractual in nature. Their duties did not arise by operation of law.
The undersigned are unaware of any case in this jurisdiction where the "going and coming" rule has been applied to deny compensation to an employee who is injured at his regular place of employment, but where his regular place of employment was not his employer's place of business or adjacent to his employer's place of business. Although plaintiff had not begun performing his usual work duties at the time of his injury, his injury occurred while he was on Bridgestone/Firestone's premises, the place defendant assigned its employees to work. Plaintiff's injury occurred at a time that defendant directed plaintiff to be on Bridgestone/Firestone's premises to perform his usual duties. Plaintiff's injury occurred after he displayed his parking credentials and passed through the security checkpoint. When he arrived in the secured parking lot, plaintiff was in the place defendant directed him to be, at the time defendant directed him to be there. Therefore, at the time of his injury, plaintiff was about his employer's business and was no longer "coming" to his assigned place of employment. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C.G.S. § 97-2(6).
2. As a result of his injury, plaintiff is entitled to payment of temporary total disability compensation at the rate of $475.06 per week from August 5, 1996 through September 16, 1996. N.C.G.S. § 97-29.
3. As a result of his injury, plaintiff is entitled to payment of permanent partial disability compensation at the rate of $475.06 per week for thirty-four weeks. N.C.G.S. § 97-31(12).
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of his injury on February 7, 1996. N.C.G.S. § 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $475.06 per week from August 5, 1996 through September 16, 1996. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 4.
2. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $475.06 per week for thirty-four weeks. This amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 4.
3. Defendant shall pay all medical expenses incurred as a result of plaintiff's injury on February 7, 1996.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff and shall be paid as follows: twenty-five percent of the lump sums due plaintiff in paragraphs 1 and 2 of this Award shall be deducted from those amounts and paid directly to plaintiff's attorney.
5. Defendant shall pay the costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of ___, 1998.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER