The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
Based upon the stipulated evidence and exhibits agreed upon by the parties, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On 1 September 1999, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. Defendant-employer had three or more employees at all times relevant to this claim.
2. On 1 September 1999, Pharmacists Mutual Insurance Company was the workers' compensation carrier on the risk for defendant-employer.
3. On 1 September 1999, plaintiff was employed by defendant-employer as a certified nursing aide (CNA) and her average weekly wage was $261.37. This yields a compensation rate of $174.26.
4. Defendant-employer employs CNAs to provide care for patients in the patients' homes. Typically, the CNAs do not travel to defendant-employer's office as part of their daily routines but instead travel directly from their own homes to the homes of the patients for whom care is being provided. This was the standard practice of plaintiff for the period of time up to and including 1 September 1999.
5. Beginning in March 1997 plaintiff's assigned patient was Ms. Locklear. Plaintiff's regular hours were weekdays 7:30 a.m. through 3:30 p.m., and Saturdays 1:00 p.m. to 8:00 p.m. On these days, plaintiff reported to Ms. Locklear's house to perform her job duties.
6. On 1 September 1999, plaintiff sustained an injury by accident within the meaning of the North Carolina Workers' Compensation Act when the vehicle she was operating was involved in a collision with another vehicle. At the time of that accident, plaintiff was driving her personal vehicle and was in route to her own personal residence from the residence of Ms. Locklear.
7. Plaintiff and other CNAs employed by defendant-employer drove their personal vehicles from their home to the patients' homes. On 1 September 1999, defendant-employer had in place a policy under which CNAs were reimbursed for certain mileage expenses. Under this policy, if a CNA drove more than 30 miles on a weekday to travel to and from their patients' residences and/or to run any errands for the patients including transporting the patients to doctor's appointments, the CNA was entitled to reimbursement for mileage at the rate of $0.27 per mile to the extent that the CNA's travel exceeded 30 miles. However, on holidays and weekends, CNAs were reimbursed for all mileage. Mileage was computed beginning and ending at the CNA's personal residence.
8. Ms. Locklear was the only patient for whom plaintiff was providing services on 1 September 1999. Ms. Locklear lived approximately 13 miles from plaintiff's residence.
9. Plaintiff's job duties included caring for the patient in the patient's home and running any errands for the patient. All of these duties required the use of plaintiff's car in order to transport plaintiff to the patient's home and also to run any necessary errands.
10. Although plaintiff periodically received reimbursement for mileage pursuant to defendant-employer's mileage reimbursement policy, such reimbursements were for mileage (1) traveled on weekends or holidays and (2) days where plaintiff was required to run errands for Ms. Locklear which resulted in total travel exceeding 30 miles for that particular day. Because 1 September 1999 fell on a Wednesday and plaintiff did not run any errands for Ms. Locklear on that day, plaintiff neither submitted a claim for reimbursement for mileage for that date, nor was she reimbursed for any mileage traveled on that date. If, on the date of plaintiff's injury, she had traveled over 30 miles or if it had been a holiday or weekend, plaintiff would have been paid mileage by defendant-employer.
11. As a result of the injury by accident on 1 September 1999, plaintiff was out of work from 2 September 1999 through 28 February 2000. On 29 February 2000 plaintiff returned to work for defendant-employer on a part-time basis. During her first five weeks back at work, plaintiff's weekly earnings were as follows: $219.20, $260.30, $266.03, $287.60, and $309.18.
12. On 4 April 2000, plaintiff returned to work in her regular capacity for defendant-employer and has had no further loss of wages.
13. As a result of the 1 September 1999 injury by accident, plaintiff retained a ten percent permanent partial impairment of her left leg.
14. The parties stipulated into evidence in this matter the following exhibits:
 (A) two pages documenting defendant-employer's mileage reimbursement policy;
(B) plaintiff's recorded statement; and
(C) plaintiff's medical records.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. To be compensable under the Workers' Compensation Act, an injury must arise out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Ordinarily, an injury occurring while an employee travels to or from work does not arise in the course of employment and is not compensable. Jennings v. Backyard Burgers of Asheville, 123 N.C. App. 129,472 S.E.2d 205 (1996). However, "[i]f travel is contemplated as a part of the work, [an] accident in travel is compensable." Ross v. YoungSupply Co., 71 N.C. App. 532 at 537, 322 S.E.2d 648 at 652 (1984). This exception is referred to as the "traveling salesmen's exception" to the coming and going rule.
2. Due to plaintiff's employment as an in-home health care provider, she was required to travel in her own vehicle back and forth to the homes of the patients and in providing services to the patients. Travel was an inherent and necessary part of the employment as an in-home health care provider. Such travel was for the benefit of her employer since its livelihood was based upon the in-home care of patients provided by its CNAs. Plaintiff was therefore acting within the course and scope of her employment at the time her injury was sustained. In a factually similar case involving an in-home health care nurse, the Arkansas Supreme Court held that a nurse's injury was compensable, stating: "It is likewise clear that delivering nursing services to patients at their homes is theraison d'etre of the appellant's business, and that traveling to patients' homes is an essential component of that service." OlstenKimberly Quality Care v. Pettey, 328 Ark. 381 at ___, 944 S.W.2d 524 at 527 (1997). Following this reasoning, plaintiff's injury is compensable under the "traveling salesman's exception" to the coming and going rule.Ross v. Young Supply Co., 71 N.C. App. 532, 322 S.E.2d 648 (1984).
3. Another exception to the coming and going rule is that when the employer provides transportation or provides allowances to cover the cost of transportation, injuries occurring while going to or returning from work are compensable. Puett v. Bahnson Co., 231 N.C. 711, 58 S.E.2d 633
(1950). In this case, defendant-employer had a travel reimbursement policy in effect on the date of plaintiff's accident. Defendant-employer's policy was arbitrary in that it provided reimbursement on some days but not on others. The fact that plaintiff's accident occurred on a day in which she had not traveled the requisite miles for reimbursement nor on a weekend or holiday should not relieve defendant from workers' compensation liability. Nonetheless, Professor Larson states that it is immaterial whether the employee is compensated for the time or expenses of travel if the automobile and travel are inherent to the employment. 1 Arthur Larson Lex K. Larson, Larson's Workers' Compensation Law, § 15.05 p. 15-12.1 (2000).
4. Based on the totality of the circumstances, plaintiff sustained an injury by accident on 1 September 1999, arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
5. As a result of her compensable injury by accident, plaintiff was disabled and is entitled to temporary total disability compensation at the rate of $174.26 per week from 2 September 1999 through 28 February 2000. N.C. Gen. Stat. § 97-29.
6. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to compensation for her ten percent permanent partial disability rating to her left leg at the rate of $174.26 per week for a period of twenty weeks. N.C. Gen. Stat. § 97-31.
7. Plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of her compensable injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for her temporary total disability from 2 September 1999 through 28 February 2000 at a rate of $174.26 per week. Said amount has accrued and shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 4.
2. Defendants shall pay compensation to plaintiff for her ten percent permanent partial disability rating to her left leg at the rate of $174.26 per week for a total of 20 weeks. Said amount has accrued and shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 4.
3. Defendants shall pay for all medical expenses resulting from plaintiff's compensable accident on 1 September 1999.
4. A reasonable attorney's fee of twenty-five percent of compensation due plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of September, 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb