***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times herein the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times herein an employer-employee relationship existed between defendant-employer and plaintiff-employee.
3. The carrier on the risk for defendant-employer is Liberty Mutual Insurance Company.
4. On March 24, 1998 plaintiff's average weekly wage was $816.78. Plaintiff's wages are sufficient to yield the maximum weekly compensation rate for 1998 of $532.00.
5. Plaintiff alleges that on March 24, 1998 he sustained severe disabling injuries as a result of an automobile accident arising out of and in the course of his employment. Defendants deny that the plaintiff's injuries were sustained in the course and scope of his employment.
6. In the event plaintiff is awarded disability compensation benefits, defendants are entitled to a deduction for the 26-week period March 25, 1998 through September 22, 1998 under the provisions of N.C. Gen. Stat. § 97-42.
7. Assuming plaintiff does not have to repay or reimburse defendant or Principle Financial Group any long-term disability benefits in the event of a favorable award to him of worker's compensation disability benefits, then defendants would be entitled to a reduction of $389.33 per month from October 1998 through September 1999, a reduction of $412.69 per month from October 1999 to September 2000 and a reduction of $437.45 per month from October 2000 through at least January 2001 pursuant to the provisions of N.C. Gen. Stat. § 97-42.
8. Industrial Commission forms and filings were stipulated into evidence as Stipulated Exhibit 1.
9. Plaintiff's medical records, Volumes I-VI, were stipulated into evidence as Stipulated Exhibit 2.
10. The issues before the Commission are: (i) whether on March 24, 1998 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, and (ii) if so, what compensation, if any, is due plaintiff.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-five years old. Plaintiff and his family had lived in Thomasville, North Carolina since 1984. Plaintiff graduated from East Davidson High School in 1973.
2. Plaintiff has a continuous work history since 1973 of working at various jobs in the furniture industry in Davidson and Guilford Counties, North Carolina.
3. In 1992, plaintiff went to work for defendant-employer's predecessor, Guardsman Products Co., Inc. of High Point, N.C., which hired plaintiff in North Carolina to work in the laboratory of their High Point manufacturing plant, located about fifteen miles from plaintiff's home in Thomasville. Guardsman Products manufactured wood finishing products for use by the furniture manufacturing industry, and defendant-employer continues this business under its name.
4. After a short time, but still in 1992, Guardsman assigned plaintiff to travel from North Carolina to service its customer Vaughn Furniture at the latter's furniture manufacturing plant located in Galax, Virginia. Plaintiff was an on-site service representative for Guardsman Products; his job was to make sure Vaughn employees properly used Guardsman Products' furniture finishing products. Plaintiff's supervisor at Vaughn was Marty Hiatt, a Guardsman employee.
5. Plaintiff normally and usually worked for Guardsman at Vaughn's Galax plant from 7:00 a.m. until 3:30 p.m. Monday through Thursday, and from 7:00 a.m. through 11:00 a.m. on Friday. Plaintiff drove his own automobile from his home in Thomasville, North Carolina to Galax, Virginia each Monday morning, and returned to his home in Thomasville on Fridays. During the period from 1992 into 1994, Guardsman paid for plaintiff's travel expenses from Thomasville to Galax, a ninety mile trip one way, for plaintiff's nightly lodging during the workweek at the Galax Travel Lodge, and for plaintiff's meals in Galax.
6. On different occasions in 1992 through 1994, Guardsman sent plaintiff for short periods to service its customer Goldsboro Furniture in Goldsboro, North Carolina, and to service Vaughn's Johnson City, Tennessee plant. Guardsman paid for plaintiff's travel expenses, meals and lodging for these trips as well.
7. In 1994, Guardsman assigned plaintiff to service its customer Lexington Furniture Company at its plants in Lexington, North Carolina. Plaintiff worked as a wood finisher representative. He drove his own automobile from his Thomasville home to work at the Lexington plant and back, a round trip of thirty miles. Plaintiff usually worked Monday through Friday from 7:00 a.m. until 3:30 p.m. Plaintiff paid for his own travel and meal expenses during the period from 1994 into early 1997, when he was assigned to work at Lexington Furniture. Plaintiff's supervisor at Lexington was Rick Madden, a Guardsman employee.
8. In 1996, defendant-employer purchased Guardsman. In 1996, plaintiff earned about $34,500.00 a year working for defendant-employer.
9. In early 1997, plaintiff told his supervisor, Rick Madden, he was unhappy at Lexington Furniture and wanted to see if there were some opportunity for him to advance with defendant-employer at another location. A short time later, Mr. Madden informed plaintiff that Marty Hiatt, his former supervisor at Vaughn in Galax, said there was an opening in Galax at another one of defendant-employer's customers there, Webb Furniture. Plaintiff told Mr. Madden and Mr. Hiatt he would return to Galax if defendant-employer would agree to pay him more money. Mr. Hiatt told plaintiff defendant-employer would "make it worth his while" and would provide him with a place to stay in Galax.
10. In or about February 1997, plaintiff began working as a sales and service representative for defendant-employer at Webb's manufacturing plant in Galax. Due to the requirements of his work for defendant-employer in Galax, and in light of the long distance from his home, plaintiff usually could not return home each night, thus requiring that he stay overnight in Galax.
11. Plaintiff's supervisor at Webb, Johnny Green, lives in Pilot Mountain, North Carolina which is close enough to Galax to allow him to return home to Pilot Mountain from work each night. Plaintiff's other supervisor at Webb, Marty Hiatt, lives in Mount Airy, North Carolina, which is also close enough to Galax to allow him to return home to Mount Airy from work each night.
12. During his second assignment to Galax, plaintiff stayed during the workweek in lodging provided by defendant-employer rather than in a motel. Defendant-employer maintained a rented and furnished house in Galax for its out-of-town employees who were there during the workweek because the rental house was less expensive than paying motel charges. The house was located about three miles from Webb's manufacturing plant and about three to four miles from one of defendant-employer's laboratories in Galax. All during this time, plaintiff's home continued to be in Thomasville, North Carolina, which was ninety miles from Galax.
13. During the fifty-two week period prior to March 1998, defendant-employer paid $6,300.00 in rent and $1,567.00 in utilities for the house in Galax where plaintiff and Ron Sparrow, another employee, stayed during the workweek. Mr. Sparrow's primary residence was in Kernersville, North Carolina and he was assigned to defendant-employer's lab in Galax.
14. Plaintiff drove his own automobile to and from Galax. On Monday, Tuesday and Thursday nights, plaintiff usually stayed at the rented house. On Wednesday nights, plaintiff usually returned to his home in Thomasville, and then on Thursday morning drove his automobile to Galax in order to report for work by 7:00 a.m. On Fridays, plaintiff usually left work at noon and drove to his home in Thomasville for the weekend, returning to Galax by 7:00 a.m. on Monday mornings. The Webb plant shut down each day at about 3:30 p.m. and at noon on Fridays.
15. Spending weeknights in the rented house was clearly contemplated as an essential ingredient of the performance of plaintiff's job. Defendant-employer maintained a rented and furnished house in Galax for its out-of-town employees to further defendant-employer's business with its customers in Galax and because the nature of the work required that defendant-employer's representatives be on site during each workweek in order to properly service Webb, an important account. Plaintiff was assigned to, and provided, lodging in Galax by defendant-employer in order to further its business with Webb.
16. It was essential that plaintiff have an automobile to perform his job duties and an automobile was part of the employment. Defendant-employer required plaintiff to have an automobile not only to get to and from Galax, but also to perform his job while there. Plaintiff was required to travel from the rented house to Webb and to and from defendant-employer's laboratory in Galax. Plaintiff spent most of each workday going back and forth between Webb's plant, defendant-employer's laboratory, and the rented house. Mr. Green's and Mr. Hiatt's offices were located on the top floor of defendant-employer's laboratory building, while the basement or lower level served as a place to work on furniture finishing and coloring. During the workday, plaintiff's work duties required him to frequently travel from the Webb plant to the laboratory to work on finishing furniture or color panels. Plaintiff's work duties required him to have an automobile to travel between the rented house and Webb Furniture and the laboratory, all located in Galax.
17. Plaintiff usually worked in Galax about fifty-five hours a week. He was not paid by the hour and he did not punch a time clock. Plaintiff was paid a salary without regard to the number of hours he worked each week. He often left the Webb plant at 3:30 p.m. and traveled in his automobile to the laboratory where he continued working. It was defendant-employer's policy to reimburse plaintiff on a unit basis for his "mileage expense" for travel to the laboratory where plaintiff usually spent about forty percent of his work time; however, it was defendant-employer's policy not to reimburse plaintiff on a formal unit basis for "mileage expense" for travel between Thomasville and Galax, or between the rented house and Webb or the lab, but defendant-employer did in fact reimburse plaintiff, as found below.
18. During 1997, plaintiff on several occasions reminded and complained to Mr. Hiatt that it was costing plaintiff about an extra $100.00 a week in travel and meal expenses to work at Webb compared to his working at Lexington Furniture. Mr. Hiatt told plaintiff to be patient because Mr. Hiatt was "working on it."
19. On or about the end of 1997, defendant-employer increased plaintiff's 1997 pay by about $5,000.00, a figure which would in fact compensate him for his increased travel and meal expenses to and in Galax. Therefore, by the end of 1997, defendant-employer did substantially reimburse plaintiff for his additional mileage or travel and meal expenses of working in Galax. This reimbursement was as defendant-employer had agreed to do in early February 1997 as part of its inducement to plaintiff to get him to agree to work in Galax away from his home and family.
20. Just a short time later, on or about February 12, 1998, plaintiff and defendant-employer also agreed to a separate performance "Sales Bonus Plan" concerning plaintiff's sales and service work at Webb. This plan was in addition to the $5,000.00 pay increase which plaintiff received at the end of 1997 and which carried over in 1998. Under the plan, plaintiff could earn a 1998 year-end bonus of about fifteen percent of his annual salary if three objectives were met at the Webb Furniture plant: (i) if defendant-employer remained the sole supplier at Webb; (ii) if defendant-employer could control rush orders to no more than ten percent of all orders; and (iii) if defendant-employer could control returns to no more than five percent.
21. During February and March 1998, plaintiff spent more time than normal working in Galax and at the laboratory in preparation for the spring furniture market to be held in High Point, North Carolina, referred to as the "market rush".
22. On the morning of Tuesday, March 24, 1998 at about 6:30 a.m. plaintiff left the rented house and drove his automobile onto Fries Road, which took him to Virginia State Road 58. This was the route from the rented house to Webb. Plaintiff had to cross the highway in order to reach the Galax Webb plant.
23. State Road 58 is a four-lane highway, with dual lanes in each direction, separated by a median. The Fries Road Highway 58 intersection is a particularly hazardous or dangerous intersection because of the amount and speed of traffic on Highway 58, because there was no traffic light at the intersection, and because the highway is hilly.
24. On the morning of March 24, 1998, it was foggy. Plaintiff drove his automobile to the median of Highway 58. He then accidentally pulled out in front of a very fast moving truck he had not seen coming over the hill to his right. The truck struck his automobile squarely on the passenger side resulting in numerous life-threatening injuries to plaintiff. He was air lifted that day from the Galax Hospital to the intensive care/trauma unit at North Carolina Baptist Hospital in Winston-Salem where he remained from March 24 through June 7, 1998. He underwent numerous surgeries due to very serious injuries to his lungs, heart, intestines, spleen, and ribs. Plaintiff's spleen was removed. He suffered kidney failure and severe abdominal swelling from the accident. He suffered from post-splenectomy infection. He remained in the hospital in a regular room from June 8-24, 1998.
25. Plaintiff was readmitted for the month of July 1998, again in October 1999 and again in July 2000.
26. From October 1998 through January 2001, plaintiff has suffered from constant pain and frequent numbness and weakness in his feet. These conditions interfere with his ability to walk except for short distances and to stand longer than brief periods of time.
27. From October 1998 through January 2001, plaintiff has also suffered from pain, numbness and weakness in his hands which he can only use for short periods of time, up to ten to fifteen minutes, after which time he must completely rest his hands for ten to fifteen minutes or longer to try to get relief from the pain, numbness and weakness. Plaintiff also tires easily and lacks endurance. All of these problems with his hands and feet and his lack of endurance are due to peripheral neuropathy which he developed as a consequence of his profound level of injuries, illness and treatment as a result of the injuries he sustained on March 24, 1998.
28. Plaintiff has not reached the end of his healing period from his injuries and has been unable to earn wages in any employment since March 24, 1998 due to his injuries suffered on that date in an automobile accident in Galax, Virginia while in the course of his employment with defendant-employer.
29. On the morning of March 24, 1998, plaintiff was engaged in an activity which he was required, authorized and expected to undertake by defendant-employer and which was calculated to further defendant-employer's business, that is, to drive his automobile from the rented house to Webb Furniture, all in Galax, Virginia, where he was assigned by defendant-employer to work and stay during the workweek in order to further defendant-employer's business with Webb.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. To be compensable under the Workers' Compensation Act, an injury must arise out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Ordinarily, an injury occurring while an employee travels to or from work does not arise in the course of employment and is not compensable. Jennings v. Backyard Burgers of Asheville, 123 N.C. App. 129,472 S.E.2d 205 (1996). However, "[i]f travel is contemplated as a part of the work, [an] accident in travel is compensable." Ross v. YoungSupply Co., 71 N.C. App. 532 at 537, 322 S.E.2d 648 at 652 (1984). Because plaintiff's travel to and around Galax, Virginia was contemplated as a part of his job with defendant-employer, plaintiff's automobile accident of March 24, 1998 arose out of and was in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident, plaintiff is entitled to total disability compensation for the period March 24, 1998 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-2(9); N.C. Gen. Stat. § 97-29.
3. Defendants shall pay all medical expenses relating to plaintiff's March 24, 1998 injury by accident as long as said treatment reasonably tends to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25.
4. On March 24, 1998, plaintiff's average weekly wage at defendant was $816.78 which is sufficient to yield the maximum compensation rate for 1998 of $532.00 per week. N.C. Gen. Stat. §§ 97-2(5) and 97-29.
5. Assuming plaintiff does not have to repay or reimburse defendant or Principle Financial Group any long-term disability, defendants are entitled to a reduction of $389.33 per month from October 1998 through September 1999, a reduction of $412.69 per month from October 1999 to September 2000 and a reduction of $437.45 per month from October 2000 through at least January 2001. N.C. Gen. Stat. § 97-42.
6. Defendants are entitled to a deduction for short-term disability payments made to plaintiff for the twenty-six week period March 24, 1998 through September 22, 1998. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation benefits at the rate of $532.00 per week beginning March 24, 1998 and continuing until further order of the Commission, subject to a deduction for the period March 24, 1998 through September 22, 1998 and subject to paragraph 2 of this award. Said amount that has accrued to date shall be paid in a lump sum subject to an attorney's fee approved below.
2. Assuming plaintiff does not have to repay or reimburse defendant or Principle Financial Group any long-term disability, defendants are entitled to a reduction of $389.33 per month from October 1998 through September 1999, a reduction of $412.69 per month from October 1999 to September 2000 and a reduction of $437.45 per month from October 2000 through at least January 2001.
3. Defendants are entitled to a deduction for short-term disability payments made to plaintiff for the twenty-six week period March 24, 1998 through September 22, 1998.
4. Defendants shall pay all medical expenses resulting from plaintiff's March 28, 1998 injury by accident.
5. An attorney's fee of twenty-five (25%) percent of disability compensation awarded in Paragraph 1 of this AWARD is reasonable under the circumstances in this case and considering the nature and extent of services provided. The attorney's fee shall be paid as follows: twenty-five (25%) percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. For each future weekly disability compensation payment due plaintiff the equivalent of every fourth check shall be paid to plaintiff's counsel.
5. Defendants shall pay all costs.
This the ___ day of March 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/mhb