***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Key Risk Management Services was the carrier on the risk at all times relevant herein.
4. Plaintiff sustained a compensable injury by accident on October 12, 1999.
5. Plaintiff has not returned to work for defendant-employer since his injury by accident on October 12, 1999.
6. Plaintiff's average weekly wage was $571.62, yielding a compensation rate of $381.10.
7. The parties stipulated to the plaintiff's medical records from Heritage Hospital, Accident and Injury Center, Boice-Willis Clinic, P.A., Nash Health Care Systems, Rocky Mount Neurosurgical Consultants, P.A., Nash Orthopaedic Associates, East Carolina Neurology, Pungo District Hospital, Seaboard Surgical Associates, P.A., and Pitt County Memorial Hospital, Inc.
8. The issues presented are:
 a) Whether plaintiff sustained a compensable injury by accident arising out of the course of his employment with defendant-employer on October 12, 1999;
 b) Whether plaintiff was commuting at the time of his injury on October 12, 1999; and
 c) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 44-year-old high school graduate who resided in Rocky Mount, North Carolina.
2. Plaintiff began working for defendant in spring 1999 as a mechanic. Defendant's business consists of supplying traveling mechanics to the job sites of various clients. Plaintiff had no regular work place. During the six months plaintiff worked for defendant, he had been assigned to four different job sites in Durham, Chapel Hill, Wilson and Raleigh. At the time of his accident, plaintiff had worked at the Mallinckrodt site in Raleigh for three months. The testimony at the Deputy Commissioner hearing established that the number of defendant's employees at the Mallinckrodt site was subject to change depending upon the needs of the client. In fact, at the time of the hearing the number of defendant's employees had decreased to three from the five or six employees working there at the time of plaintiff's accident. Plaintiff testified that "it was like a day-to-day thing. You never know where they're going to send you. Because, I mean that's what I was told when I got the job. You might move around. You may stay at a job. You never know."
3. Defendant paid its employees $10.00 per day for travel when the employee traveled to a work site that was located more than 50 miles away from defendant's home office in Rocky Mount. Since the sole basis for payment of the per diem was mileage, the correct classification for the payment is paid travel reimbursement.
4. On October 12, 1999, plaintiff was working for defendant at the Mallinckrodt plant in Raleigh. Since the Mallinckrodt plant is one of defendant's clients that is located more than 50 miles away from defendant's Rocky Mount office, plaintiff was paid a $10.00 a day travel reimbursement while he worked there. Plaintiff was also paid $10.00 a day while he was assigned to job sites in Durham and Chapel Hill, but was not paid the daily allowance while he was working in Wilson, since it is not more than 50 miles from Rocky Mount.
5. On October 12, 1999, plaintiff left the Mallinckrodt plant in Raleigh where he had been working that day to return home when suddenly and without warning another vehicle failed to yield at a stop sign and collided with plaintiff's vehicle.
6. Plaintiff struck his head during the accident and lost consciousness. Later the night of October 12, 1999, plaintiff began to have symptoms including loss of visual acuity, trouble walking in a straight line and severe pain in his back and neck. On October 13, 1999, plaintiff presented to Heritage Hospital where a CT brain scan was performed. The brain scan showed a subarachnoid cyst left of the quadrigemminal plate cistern of the medial temporal region.
7. Plaintiff was treated conservatively by Dr. McKinnon, a chiropractor, on October 18, 1999. Since chiropractic treatment was unable to reduce the pain in his back, and did not address his unsteadiness while walking, dizziness and head injury, on October 29, 1999, Dr. McKinnon referred plaintiff to Dr. Rosario Guarino.
8. Dr. Guarino, after initial examination, recommended completion of the chiropractic treatment. In a subsequent office visit, Dr. Guarino noted that plaintiff continued to have head shaking, arm shaking and pain in his forearms and shoulders. The physical exam revealed intermittent head tremor and some tremor of the outstretch hands. Dr. Guarino ordered an MRI scan of the cervical spine and referred plaintiff to Dr. Lucas J. Martinez.
9. Plaintiff presented to Dr. Lucas Martinez, a neurosurgeon, with complaints of neck pain radiating into both thumbs, left on the worse than the right. Dr. Martinez also noted plaintiff's abnormal shaking of the head, which was unrelated to his neck complaints. Dr. Martinez found that the complaints and injury for which he treated plaintiff were related to the October 12, 1999 automobile accident.
10. Dr. Martinez ordered a myelogram, which confirmed that plaintiff had a herniated disc at C6-C7. Dr. Martinez recommended an anterior cervical discectomy and fusion. After the myelogram, plaintiff suffered from chemical meningitis secondary to the myelogram dye.
11. Dr. Martinez performed an anterior cervical discectomy and fusion with left iliac bone graft at the C6-C7 level. During follow-up visits plaintiff continued to have pain and limited motion in the spine. Plaintiff also had complaints of bi-lateral numbness in the fourth and fifth fingers. On September 19, 2000, Dr. Martinez released plaintiff with a 10% permanent partial disability rating to the back and permanent work restrictions. Dr. Martinez had no further treatment besides the administration of pain medication to offer plaintiff, so he encouraged plaintiff to follow up with his family physician, Dr. Gregory Jones, for pain management.
12. At the time of the Deputy Commissioner hearing, Dr. Jones continued to treat plaintiff for severe pain, which Dr. Jones relates to the October 12, 1999 automobile accident. Dr. Jones also testified that he has had the opportunity to observe plaintiff not only in his office, but also in the community and through these observations, Dr. Jones believes that plaintiff is suffering from severe pain. Dr. Jones is also treating plaintiff for depression secondary to severe pain. Dr. Jones relates plaintiff's head injury to the October 12, 1999 accident.
13. Since plaintiff continued to have short-term memory loss and dizziness, he was referred to East Carolina Neurology by Dr. Jones. He was diagnosed with post-motor concussive syndrome with pre-syncopal symptoms and mild short-term memory impairment, neck pain post cervical diskectomy and back pain. It was documented that plaintiff also suffers from objective sensory deficits, including bilateral hand numbness and bilateral lower extremity dysesthetic sensation. Dr. Price at East Carolina Neurology referred plaintiff to a pain clinic and physical therapy.
14. The competent evidence in the record establishes that defendant's livelihood is built upon being able to provide skilled labor to its clients located across the state. Defendant's mechanics are required to travel to any job site to which they are assigned. These job sites are always subject to change. Plaintiff's travel was for the benefit of defendant. Moreover, defendant paid its employees $10.00 per day for travel when they worked at a site located more than 50 miles from defendant's home office in Rocky Mount and plaintiff was paid $10.00 per day for reimbursement for travel to the Mallinckrodt site.
15. The greater weight of the competent evidence in the record establishes that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant on October 12, 1999 and that plaintiff continues to be unable to perform any work as a result of his injury by accident and requires ongoing medical treatment due to the October 12, 1999 accident.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. To be compensable under the Workers' Compensation Act, an injury must arise out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Generally, an injury occurring while an employee is traveling to or from work does not arise in the course of employment and is not compensable. Royster v. Culp, Inc., 343 N.C. 279, 470 S.E.2d 30
(1996); Jennings v. Backyard Burgers of Asheville, 123 N.C. App. 129,472 S.E.2d 205 (1996). When travel is contemplated as part of the work assigned, then an accident in travel is compensable. Ross v. YoungSupply Co., 71 N.C. App. 532, 533, 322 S.E.2d 658, 661 (1984). When the employment requires travel that is incidental to the employment, the hazards of the route become the hazards of the employment. Hinkle v.City of Lexington, 239 N.C. 105, 79 S.E.2d 220 (1953). This exception to the "coming and going rule" is referred to as the "traveling salesman's exception." Ross v. Young Supply Co., supra.
2. Due to plaintiff's employment as a mechanic with no regular place of business who was assigned to defendant's customers wherever he was needed, he was required to travel in his own vehicle back and forth to the locations to which he was assigned. Travel was an inherent and necessary part of the employment. Such travel was for the benefit of his employer since defendant was in the business of supplying mechanics who traveled to its customers' job sites. Travel was required of plaintiff and was contemplated as a part of the work assigned to plaintiff as a mechanic who traveled to and from various job sites. Plaintiff was therefore acting within the course and scope of his employment at the time his injury was sustained and plaintiff's injury is compensable under the "traveling salesman's exception" to the coming and going rule. Rossv. Young Supply Co., supra.
3. The dissent relies upon the decision in a recent Court of Appeals case, Hunt v. Tender Loving Care Home Care Agency, ___ N.C. App. ___,569 S.E.2d 675, disc. review denied, 356 N.C. 436, 572 S.E.2d 784
(2002), in which the Court held that the "traveling salesman" exception did not apply to a certified nursing assistant who had worked for only one patient during her entire two years of employment and therefore had fixed hours of employment and a fixed work location. However, the facts in Hunt are distinguishable from those present in the case at bar. In this case plaintiff had only worked for defendant for six months and during that time had worked at four different job sites in four different locations. Although plaintiff had been working at the Mallinckrodt plant for three months prior to his accident, the greater weight of the evidence, including that of defense witness William Lee, showed that the number of employees fluctuated at the Mallinckrodt plant, depending on the number needed and requested by Mallinckrodt. At the time of the Deputy Commissioner hearing, the number of defendant's employees at the plant had decreased from the five or six working at the time of plaintiff's accident to three. Therefore, the facts in this case show that plaintiff did not have a fixed job location as did the plaintiff in Hunt.
4. Another exception to the coming and going rule is that when the employer provides transportation or provides compensation to cover the cost of transportation, injuries occurring while going to or returning from work are compensable. Puett v. Bahnson Co., 231 N.C. 711,58 S.E.2d 633 (1950). In this case, defendant paid its employees $10.00 per day whenever an employee was assigned to work at a job site that was located over 50 miles from defendant's Rocky Mount office. Plaintiff was paid the $10.00 per day allowance for his work assignment at the Mallinckrodt plant in Raleigh. The sole basis for the allowance was mileage, and therefore the reasonable inference is that the allowance was travel reimbursement. Therefore, plaintiff's injury by accident on October 12, 1999 also falls under the paid travel exception to the coming and going rule.
5. Based on the totality of the circumstances in this case, on October 12, 1999 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
6. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to total disability compensation at the rate of $381.10 per week beginning October 12, 1999 and continuing until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to have defendant pay for all of his medical expenses incurred or to be incurred, as a result of his compensable injury by accident, including all examinations, evaluations and treatments, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. §§97-25; 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendant shall pay to plaintiff total disability compensation at the rate of $381.10 per week beginning October 12, 1999 and continuing until plaintiff returns to work or until further Order of the Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees approved below.
2. Defendant shall pay for all of plaintiff's medical expenses incurred or to be incurred, as a result of his compensable injury by accident of October 12, 1999, including all examinations, evaluations and treatments, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
3. A reasonable attorney's fee of 25% of the compensation benefits due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. Defendant shall pay to plaintiff's counsel one fourth of the lump sum awarded to plaintiff. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs, including an expert witness fee of $335.00 to Dr. Martinez, to the extent this fee has not already been paid.
This the ___ day of May 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING WITH A SEPARATE OPINION:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITH A SEPARATE OPINION:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER